UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

| | |
|---|---|
| BENJAMIN MOSTAED, on behalf of himself and all others similarly situated,<br><br>   Plaintiff,<br><br>  v.<br><br>JAMES B. CRAWFORD, ROBERT H. FOGLESONG, RICHARD M. GABRY'S, ROBERT B. HOLLAND, BOBBY R. INMAN, DAN R. MOORE, BAXTER F. PHILLIPS, JR., STANLEY C. SUBOLESKI, LINDA J. WELTY, and DOES 1-25, inclusive,<br><br>   Defendants. | Case No.:   3:11-CV-079-REP<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR A STAY |

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL AND PROCEDURAL HISTORY .................................................................2

III.    ARGUMENT ......................................................................................................4

        A.      The Colorado River Doctrine Does Not Apply Because The
                Delaware Derivative Action Is Not Substantially Similar To
                The Instant Case............................................................................................5

        B.      Even If The Colorado River Doctrine Applied, A Stay Of This
                Case Would Be Inappropriate Because "Exceptional Circumstances"
                Do Not Exist Warranting Such Action ...................................................8

                1.      Questions About The Delaware Court Plaintiffs' Inability To
                        Resolve The Federal Court Plaintiffs' Breach Of Fiduciary
                        Duties Claims Are Dispositive Against A Stay Under
                        *Colorado River*............................................................................9

                2.      Consideration Of The Factors Of The *Colorado River*
                        Analysis Further Cautions Against A Stay ................................10

IV.     CONCLUSION...................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Chase Brexton Health Servs., Inc. v. Md.*,
    411 F.3d 457 (4th Cir. 2005) ............................................................ 8

*Cohens v. Va.*,
    19 U.S. 264 (1821) ............................................................................ 8

*Colo. River Water Conservation Dist. v. U.S.*,
    424 U.S. 800 (1976) ...................................................................*Passim*

*Great Am. Ins. Co. v. Gross*,
    468 F.3d 199 (4th Cir. 2006) ................................................... 7, 8, 10

*Gross v. Weingarten*,
    217 F.3d 208 (4th Cir. 2000) .......................................................... 16

*In re Countrywide Fin. Corp. Derivative Litig.*,
    542 F. Supp. 2d 1160 (C.D. Cal. 2008) ......................................... 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)......................................................................*Passim*

*Quackenbush v. All-State Ins. Corp.*,
    517 U.S. 706 (1996).......................................................................... 16

*Ryan v. Johnson*,
    115 F.3d 193 (3d Cir. 1997)............................................................ 12

*Strigliabotti v. Franklin Resources, Inc.*,
    2006 U.S. Dist. LEXIS 73672 (N.D. Cal. Sept. 27, 2006) ................ 7

*Stull v. Baker*,
    410 F. Supp. 1326 (S.D.N.Y. 1976)................................................. 7

*Teamsters Local Nos. 175 & 205 Pension Trust Find v. IBP, Inc.*,
    123 F. Supp. 2d 514 (D.S.D. 2000) ................................................ 13

*Travelers Indem. Co. v. Madonna*,
    914 F.2d 1364 (9th Cir. 1990) ................................................. 12, 15

*Tuscano v. Tuscano*,
    403 F. Supp. 2d 214 (E.D.N.Y. 2005) ............................................ 7

*U.S. v. Morros*,
    268 F.3d 695 (9th Cir. 2001) .......................................................... 12

I.      **INTRODUCTION**

Defendants' Motion for a Stay ("Defs.' Br.") is predicated entirely on Defendants' misguided attempt to make two very different cases appear to be substantially similar.  However, a quick comparison of these two cases demonstrates that they are far from substantially similar:

(1)     The case pending in the Delaware Court of Chancery was filed nearly one year ago as a shareholder ***derivative action brought on behalf of Massey Energy Company*** ("Massey" or the "Company") and asserting claims against the officers and directors of Massey arising out of their alleged failure to oversee the Company's compliance with safety regulations which led to an explosion at Massey's Upper Big Branch mine on April 5, 2010 (the "Delaware Derivative Action"); and

(2)     The case pending before this Court is a shareholder ***class action brought against Massey***, its officers and directors (the "Individual Defendants"), and Alpha Natural Resources, Inc. ("Alpha") arising out of their breaches of fiduciary duties in connection with the announcement of a proposed merger between Massey and Alpha on January 29, 2011 (the "Proposed Merger") in which Alpha would acquire Massey for an implied enterprise value of $8.5 billion (the "Federal Class Action").

As demonstrated below, these actions are not sufficiently "substantially similar" to justify a stay of the Federal Class Action.  Not only are the parties different, but the primary focus of the cases is quite distinct.  The only similarities between them stem from the Delaware plaintiffs' hasty attempt to add "tag-along" direct claims challenging the Proposed Merger to their otherwise entirely derivative action.  However, adding ancillary tag-along claims from one

Federal Class Action *against a company* to another completely different state action *on behalf of the same company* does not render the two cases "substantially similar," nor does it come close to providing the "exceptional circumstances" necessary for a federal court to ignore its "virtually unflagging obligation . . . to exercise the jurisdiction given to them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Because federal courts may abstain under the *Colorado River* doctrine only when a "substantially similar" state court action is pending, and because the Delaware Derivative Action is not substantially similar to the Federal Class Action, abstention under this doctrine is inappropriate. *Id.* at 813.

However, even if the *Colorado River* doctrine applied, Defendants have not satisfied their high burden of proof to demonstrate that "exceptional circumstances" exist to justify the grant of a stay in this case. *Id.* at 813. While Defendants may prefer to stay in Delaware, Massey's headquarters and principal place of business are in Richmond, Virginia, not Delaware. In addition, most if not all of the documents and witnesses are located in Virginia, not Delaware. To avoid these facts, Defendants misconstrue *Colorado River*'s extremely narrow abstention rule in arguing that a stay is warranted here. Cases considering similar *Colorado River* abstention issues clearly indicate that the relevant *Colorado River* factors not only fail to present the "exceptional circumstances" required for the Court to decline to exercise its jurisdiction, but they also specifically caution against it. For these reasons, the Court should deny Defendants' motion in its entirety.

## II.   FACTUAL AND PROCEDURAL HISTORY

On April 5, 2010, an explosion at Massey's Upper Big Branch mine in West Virginia claimed the lives of 29 miners. Shortly after this tragic incident, a number of shareholder derivative actions were filed – including the Delaware Derivative Action – alleging that

Massey's directors and officers had breached their fiduciary duties by failing to adequately oversee the Company's compliance with safety regulations which led to the explosion.  The Delaware plaintiffs filed an amended complaint on July 7, 2010, and the Delaware Derivative Action was consolidated with other related cases on October 21, 2010.  A Consolidated Amended Complaint was filed in the Delaware Derivative Action on January 10, 2011.

For the next nine months of litigation in the Delaware Derivative Action – from the date the first complaint was filed until the date the Consolidated Amended Complaint was filed on January 10, 2011 – the Delaware Derivative Action remained solely a shareholder derivative action brought on behalf of and for the right of Massey.  All iterations of the operative complaint in the Delaware Derivative Action made allegations only against Massey's officers and directors relating to the Company's compliance with safety regulations and the Upper Big Branch mine explosion.  Similarly, all complaints filed during this time only brought claims for breach of fiduciary duties against Massey's officers and directors derivatively on behalf of Massey.  At no time during the first nine months of litigation did any complaint filed in, related with, or consolidated to the Delaware Derivative Action make any allegations challenging any proposed transaction, including the Proposed Merger, bring any direct claims against Massey's officers and directors, or name Massey or Alpha as defendants.

The Proposed Merger was announced on January 29, 2011.  The Delaware plaintiffs recognized that while their derivative claims might survive if the Proposed Merger does not happen, these claims were at risk of being extinguished if the Proposed Merger is consummated.  Thus, they quickly sought to add class claims challenging the Proposed Merger as ancillary "tag-along" claims to their otherwise completely derivative action.  On March 1, 2011, the Delaware Chancery Court approved the filing of a proposed Second Amended Complaint to include the

tag-along direct claims into the Delaware Derivative Action.  This Second Amended Complaint is still focused upon the derivative claims relating to the mine explosion, but also adds direct class claims against Massey's officers and directors for breach of fiduciary duties and against Alpha for aiding and abetting breaches of fiduciary duties.  Notably, so as to prevent defendants there from arguing that they have a conflict of interest, the Delaware plaintiffs do not even name Massey as a defendant even though Massey is a necessary party-defendant.

By contrast, the actions filed in this Court on February 2 ("*Mostaed*"), February 4 ("*Perkins*"), and February 18 ("*Mandel*"), collectively comprising the Federal Class Action, are not shareholder derivative actions, do not assert claims arising from the Upper Big Branch mine disaster, and do not assert claims on behalf of Massey.  Rather, the Federal Class Action's sole focus is on the substantively and procedurally unfair Proposed Merger announced on January 29, 2011.  Unlike the Delaware Derivative Action, the Federal Class Action focuses entirely on the facts surrounding the Proposed Merger, and accordingly seeks to obtain full relief for a putative plaintiff shareholder class by naming defendants not named in the Delaware Derivative Action and asserting claims not asserted in the Delaware Derivative Action.  Importantly, the Federal Class Action names Massey as a defendant and asserts a claim against the Company for aiding and abetting the Individual Defendants' breaches of their fiduciary duties.  By asserting only direct claims on behalf of Massey shareholders related to the Proposed Merger and not asserting derivative claims on behalf of the Company related to the Upper Big Branch mine disaster, the Federal Class Action is clearly not substantially similar to the Delaware Derivative Action.

## III.   ARGUMENT

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them."  *Colorado River*, 424 U.S. at 817.  The United States Supreme Court held in

*Colorado River* that "abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813 (finding that, because the federal courts "have a heavy obligation to exercise jurisdiction . . . only the clearest of justifications will warrant dismissal" in deference to a concurrent state proceeding). Defendants misconstrue *Colorado River*'s extremely narrow abstention rule in arguing that the Court should stay this case in favor of a concurrently pending state case. Defendants' argument fails for two independent reasons:

(1)     The *Colorado River* doctrine does not apply in this case because the Delaware Derivative Action is not substantially similar to the Federal Class Action; and

(2)     Even if the *Colorado River* doctrine applied, no exceptional circumstances exist to warrant a stay.

**A.     The Colorado River Doctrine Does Not Apply Because The Delaware Derivative Action Is Not Substantially Similar To The Instant Case**

The threshold inquiry under the *Colorado River* doctrine is whether a parallel state court action is pending. *See Colorado River*, 424 U.S. at 815-16. While "exact parallelism" is not required, Defendants have the burden to demonstrate that the two cases are "substantially similar" for the doctrine to apply. *Id.* Defendants fail to do so. The Federal Class Action is not substantially similar to the Delaware Derivative Action, because the Federal Class Action challenges the Proposed Merger between Massey and Alpha on January 29, 2011, ***and names Massey as a Defendant***, whereas the Delaware Derivative Action is almost entirely a derivative action challenging conduct arising out of the Upper Big Branch mine disaster in West Virginia on April 5, 2010, and has been brought ***on behalf of and for the benefit of Massey***. Any similarity between the two cases is illusory, because it is nothing more than the result of the

Delaware plaintiffs adding tag-along claims about the Proposed Merger nine months after commencing their otherwise entirely derivative litigation.

Defendants, playing fast and loose with the facts, blithely assert that "there can be no serious debate that the Virginia and Delaware Litigations are parallel for the purpose of staying the Virginia actions."  Defs.' Br. at 8-9.  However, Defendants' *ipse dixit* assertion fails to satisfy their burden of proof and is based on a largely inaccurate reading of the facts as they stand in the Delaware Derivative Action.  The Delaware Derivative Action was originally filed as a derivative action on behalf of the Company claiming that Massey's directors and officers had failed to adequately oversee the Company's compliance with safety regulations that led to the tragedy at the Upper Big Branch mine in West Virginia on April 5, 2010.  For the next nine months this case was litigated solely as a derivative action on facts solely arising out of the mine disaster in West Virginia.  It was not until January 31, 2011, when the Delaware plaintiffs sought leave to file a Second Amended Complaint to add tag-along claims, that the Delaware Derivative Action even mentioned the underlying allegations and claims at the heart of this action.  These claims are ancillary to the primary allegations in the Delaware Derivative Action, which are derivative in nature and arise out of a completely different set of facts from those alleged in the Federal Class Action.

Indeed, the fact that plaintiffs in the Delaware Action chose not to name Massey as a defendant indicates that their focus is primarily derivative in nature, and is starkly different from the Federal Class Action.[1]  The Delaware Derivative Action exists primarily to benefit Massey as

---

[1] While the Second Amended Complaint in the Delaware Derivative Action has been filed under seal, and thus, Plaintiffs cannot know for certain whether Massey has been named as a defendant, one can reasonably infer this from Defendants' statement that "[b]oth sets of litigations are representative actions that name Massey's nine current directors and Alpha as defendants," but remaining silent on whether both actions name Massey as a defendant.  Defs.' Br. at 6.  In any

"the real party in interest" in the derivative litigation.  The Federal Class Action, in contrast, names Massey as a defendant and seeks to stop its aiding and abetting its directors' and officers' breaches of fiduciary duties arising from the Proposed Merger.

In fact, some courts suggest that the Delaware plaintiffs are precluded from naming Massey as a defendant, lest a conflict of interest arise from the same plaintiff asserting claims against and on behalf of Massey in the same case.  *See Stull v. Baker*, 410 F. Supp. 1326, 1336-37 (S.D.N.Y. 1976) ("it is difficult to understand how an attorney can properly represent the interests of a corporation and its present shareholders in a derivative action brought on their behalf, and, at one and the same time, properly represent its present and/or former shareholders in a class action against the corporation, without compromising his independence of professional judgment and loyalty to these two groups of clients with potentially conflicting interests.").[2] This potential scenario further evidences the inappropriateness of a stay, because it raises the risk that the Delaware Derivative Action will not adequately protect the putative plaintiff class with respect to the Proposed Merger.  *See Great American Ins. Co. v. Gross*, 468 F.3d 199, 208 (4th Cir. 2006) ("[A]bstention . . . may be considered only when 'the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'") (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)).

---

event, the burden lies with Defendants to prove that the actions are substantially similar.  By declining to state whether Massey is a defendant in both cases, they have failed to do so.

[2] *See also Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 223-24 (E.D.N.Y. 2005) (dismissing direct claims because "[a]ny individual claims raised by a shareholder in a derivative action present an impermissible conflict of interest"); *Strigliabotti v. Franklin Resources, Inc.*, 2006 U.S. Dist. LEXIS 73672, at *12 (N.D. Cal. Sept. 27, 2006) (observing "structural conflicts that would be created between a California class asserting direct claims, and the shareholders asserting derivative claims.").

**B.     Even If The Colorado River Doctrine Applied, A Stay Of This Case Would Be Inappropriate Because "Exceptional Circumstances" Do Not Exist Warranting Such Action**

Even if the *Colorado River* doctrine applied in this case, which it does not, Defendants still fail to satisfy their burden of proof because they cannot demonstrate that exceptional circumstances exist warranting a stay.

As a general rule, "'the pendency of an action in the state [court] is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction.'"  *Great American Ins. Co.*, 468 F.3d at 205, *see Colorado River*, 424 U.S. at 813. ("Abstention from the exercise of federal jurisdiction is the exception, not the rule.").  Indeed, the Fourth Circuit has cautioned that courts "must remain mindful that . . . abstention 'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it' and that '[a]bdication of the obligation to decide cases can be justified under [abstention] only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.'"  *Id.* at 207 (quoting *Colorado River*, 424 U.S. at 813). Absent such exceptional circumstances, federal courts have a "virtually unflagging obligation" to exercise their jurisdiction concurrently with state courts.  *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005) (noting that "[f]ederal courts 'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not.'") (quoting *Cohens v. Virginia*, 19 U.S. 264, 404 (1821)).

Indeed, the existence of any substantial doubt as to whether . . . "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties," is dispositive against a stay or dismissal under *Colorado River*.  *Moses H. Cone Mem'l. Hosp.*, 460 U.S. at 28.

> **1.      Questions About The Delaware Court Plaintiffs' Inability To Resolve The Federal Court Plaintiffs' Breach Of Fiduciary Duties Claims Are Dispositive Against A Stay Under *Colorado River***

Under the *Colorado River* doctrine, the existence of "any substantial doubt" as to whether the state proceedings will resolve the Federal Class Action is dispositive against a stay. *Moses H. Cone Mem'l. Hosp.*, 460 U.S. at 28 (finding that "[i]f there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all."). Here, two facts create a substantial doubt that the concurrent Delaware Derivative Action will resolve the issues presented in the Federal Class Action.

First, substantial doubts exist about the primacy of the breach of fiduciary duties claims arising from the Proposed Merger in the Delaware Derivative Action. As demonstrated above, the Delaware Derivative Action has been solely a derivative action for nearly a year, and only recently added ancillary allegations and claims about Defendants' wrongdoing in connection with the Proposed Merger. These "tag-along" claims and allegations are entirely different from the claims and issues the plaintiffs and defendants in the Delaware Derivative Action have been litigating for nearly a year, and substantial questions exist as to the Delaware Derivative Action plaintiffs' willingness to adequately and completely prosecute these new claims.

Second, substantial doubts exist as to the Delaware Derivative Action plaintiffs' ability to prosecute these new claims, because they now bring derivative claims on behalf of the Company and direct claims to enjoin the Proposed Merger. While it appears that the Delaware Derivative Action plaintiffs have strategically chosen not to name Massey as a defendant to avoid a potential conflict of interest, this decision precludes them from naming a necessary party and from bringing a claim for aiding and abetting breaches of fiduciary duties against Massey, a claim that is necessary for the putative plaintiff class to obtain full relief. Even if the Delaware

Derivative Action plaintiffs later add Massey as a defendant, that will raise separate, but equally troubling questions regarding the plaintiffs' potential conflict of interest, further raising substantial doubts about the Delaware Derivative Action as "an adequate vehicle for the **complete** and prompt resolution of the issues between the parties."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28 (emphasis added).

> **2.    Consideration Of The Factors Of The *Colorado River* Analysis Further Cautions Against A Stay**

Defendants devote the majority of their *Colorado River* analysis to the various factors courts may consider in determining whether to stay an action.  While the arguments above clearly demonstrate that a stay is unwarranted in this case, a consideration of these factors further cautions against a stay.

To determine whether exceptional circumstances exist, courts may consider six factors: (1) whether either court has assumed jurisdiction over a *res*; (2) the relative convenience of the state and federal forums; (3) the desirability of avoiding piecemeal litigation; (4) the order in which each forum obtained jurisdiction; (5) whether state or federal law controls; and (6) whether the state action adequately protects parties' rights.[3]  *See Colorado River*, 424 U.S. at 818; *Moses H. Cone Mem'l. Hosp.*, 460 U.S. at 25.  "No one factor is necessarily determinative." *Colorado River*, 424 U.S. at 818.  Courts must "tak[e] into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise," *id.*, and should resolve all doubts against a stay.  *Great American Ins. Co.*, 468 F.3d at 207 ("If parallel

---

[3] The Supreme Court articulated factors (1)-(4) in *Colorado River*.  *See* 424 U.S. at 817.  The Court then added factors (5)-(6) in *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 8.

suits exist, then we must carefully balance several factors 'with the balance heavily weighted in favor of the exercise of jurisdiction.'") (quoting *Moses H. Cone Mem'l. Hosp.*, 460 U.S. at 16).

Here, an examination of these factors shows that Defendants have not satisfied their burden of showing exceptional circumstances exist to warrant the extraordinary measure of this Court declining to exercise its jurisdiction.

### (a)       Assumption of Jurisdiction Over a *Res*

Defendants ignore the first *Colorado River* factor in their brief, presumably conceding that it is not relevant to the analysis.  Plaintiffs agree that this factor is not relevant in this case, and thus cannot assist Defendants in carrying their heavy burden of demonstrating that exceptional circumstances warrant a stay.

### (b)       The Relative Convenience of the State and Federal Forums

Defendants also ignore *Colorado River*'s second factor regarding the relative convenience of the state and federal forums, likely because this factors weighs heavily *against a stay*.  In this case, Virginia is a much more convenient forum than Delaware.  Both Massey and Alpha are headquartered and have their principal places of business in Virginia; indeed, Alpha is located in Richmond, only a short distance from this Court.  Thus, for purposes of discovery and trial, it appears that most if not all of the documents and witnesses are located in Virginia, not Delaware.  Moreover, at least three of the Individual Defendants are residents of Virginia, whereas no Individual Defendants are residents of Delaware.

Perhaps more importantly, Delaware would prove a much less convenient – indeed, an inadequate – forum.  The Delaware Court of Chancery does not have the power to subpoena out-of-state defendants to trial, and is limited to admitting depositions of out-of-state defendants into evidence.  *See* Delaware Court of Chancery Rule 32(a).  This Court clearly has the power to

subpoena out-of-state defendants to trial.  Therefore, there can be no question that this *Colorado River* factor weighs strongly in favor of denying Defendants' motion to stay.

**(c)**       **The Desirability of Avoiding Piecemeal Litigation**

Defendants erroneously claim that the mere existence of two similar concurrent cases "calls for issuing a stay" in order to "avoid[] piecemeal litigation."  Defs'. Br. at 15.  This argument fails, because, as several courts have held, "it is evident that the 'avoidance of piecemeal litigation' factor is met . . . only when there is evidence of a strong federal policy that all claims should be tried in state courts."  *Ryan v. Johnson*, 115 F.3d 193,197-98 (3d Cir. 1997); *see also United States v. Morros*, 268 F.3d 695, 706-07 (9th Cir. 2001).  No such federal policy exists in this case and Defendants have cited none in their brief.  The Ninth Circuit Court of Appeals addressed this issue in *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364 (9th Cir. 1990), and its reasoning is instructive here.  *Travelers* involved a dispute over insurance premium payments between an insured and an insurer.  *Id.* at 1366.  The insured first commenced action in state court against the insurer and an insurance agent, alleging, among other things, breach of fiduciary duty.  *Id.*  Three days later, the insurer sued the insured in federal district court for breach of contract.  *Id.*  The district court stayed the Federal Class Action in favor of the state court action, solely for the purpose of "avoiding piecemeal litigation."  *Id.* at 1367.  The Ninth Circuit reversed, noting in part that, because the case involved ordinary tort issues, "no federal legislation evincing a federal policy to avoid piecemeal litigation is applicable."  *Id.* at 1369. Similarly, all the claims in this case involve ordinary tort issues, including the breach of a fiduciary duty against the Individual Defendants and aiding and abetting breach of a fiduciary duty against Massey and Alpha.  Therefore, no federal policy to avoid piecemeal litigation exists in this case; accordingly, the "piecemeal litigation" factor cannot weigh in favor of a stay.

Rather than asserting a strong federal policy weighing in favor of a stay, Defendants instead rely on two inapposite district court cases – one from South Dakota and one from California – for the untenable proposition that federal courts should always abstain in cases where plaintiffs seek to enjoin a proposed merger on behalf of a class of shareholders.  *See* Defs.' Br. at 15-16.  Each case is factually distinguishable.  In *Teamsters Local Nos. 175 & 205 Pension Trust Find v. IBP, Inc.*, 123 F. Supp. 2d 514 (D.S.D. 2000), the court granted a stay of an action seeking to enjoin a proposed merger in favor of a concurrently pending action in Delaware.  However, in that case, unlike here, two new bidders stepped forward to purchase the company at issue, and it was this development that particularly concerned the court: "In this case, the risks associated with conflicted adjudications are particularly high.  Recently, two new bidders offered to buy IBP for nominally higher prices than DLJ. . . .  If the courts cannot reach a definite and speedy conclusion . . . both Defendants and the shareholders of IBP will suffer."  *Id.* at 518.  In other words, while a risk existed in *Teamsters* that the new bidders might disappear while the courts determined how to resolve the issues before them, no such risk exists here.  Additionally, the court in *Teamsters* found that the state court action had been filed over a month before the Federal Class Action and that significant progress had been made in the state action.  *Id.* at 515-16.  As demonstrated below, these factors are not presented in this case.

Defendants' reliance on *In re Countrywide Financial Corporation Derivative Litigation*, 542 F. Supp. 2d 1160 (C.D. Cal. 2008), is similarly unavailing.  While the court in that case did express concern regarding the risk of piecemeal litigation, it also found a number of other *Colorado River* factors weighing in favor of a stay, including that the parallel state court action "obtained jurisdiction . . . about one month before" the federal court, and that the state court "is further along in adjudication than this Court.  There, the parties have stipulated to expedited

discovery and scheduled a hearing on a preliminary injunction . . ." *Id.* at 1173.  These factors

are not present in this case.  The Delaware plaintiffs sought leave to amend their complaint to

include claims challenging the Proposed Merger on January 31, 2011, a mere two days before

the first complaint was filed in the Federal Class Action.  Moreover, as discussed below, very

little has transpired in the Delaware Derivative Action that can be considered "progress."

**(d)**        **The Order in Which Jurisdiction Was Obtained**

Defendants next try to satisfy their burden of proof relying on *Colorado River*'s fourth

factor regarding the order in which the actions were filed to contend that a stay is warranted,

because "[t]he Delaware Derivative Action was filed before . . . the Virginia Litigations."  Defs.'

Br. at 13.  This argument is similarly unpersuasive and relies on a massaging of the facts by

Defendants.  While Defendants tout the fact that "Plaintiffs have asserted derivative shareholder

claims against Massey's directors in Delaware Chancery Court since April 2010," (Defs.' Br. at

14), this fact is completely irrelevant to the analysis because the Delaware Derivative Action is

not substantially similar to the Federal Class Action – in fact, it is entirely different.  Defendants

also point to January 10, 2011 as a potentially operative date in Delaware, claiming that

"[Plaintiffs] made allegations regarding the impending merger."  *Id.*  This date is also irrelevant,

because the only action in existence as of January 10, 2011 was the same Delaware Derivative

Action.  No claims for breach of fiduciary duty for conduct relating to neither the Proposed

Merger nor requests to enjoin the Proposed Merger were made by the Delaware Derivative

Action plaintiffs on that date – nor could they have been, because the claims would not have

been ripe.

In reality, the operative date is January 31, 2011, the date on which the Delaware

plaintiffs sought leave to file a Second Amended Complaint to add tag-along claims challenging

the Proposed Merger.  This is a scant two days before Plaintiff Mostaed filed his complaint in

-14-

this Court on February 2, 2011.  Such a small difference is of no import under the *Colorado River* analysis.  *See Moses H. Cone Mem'l. Hosp.*, 460 U.S. at 21 (priority "should not be measured exclusively by which complaint was filed first"); *Travelers*, 914 F.2d at 1370 (finding that this factor was neutral when "the state court action was filed only three days prior to the federal action").

Defendants also argue that the "order" of cases justifies a stay of the Federal Class Action because the Delaware Derivative Action "has progressed further than the Virginia Litigations." Defs.' Br. at 14.  However, the only progress in the Delaware Derivative Action to which Defendants can point is the appointment of lead plaintiffs and counsel and the service of discovery requests by plaintiffs' counsel.  Defs.' Br. at 14-15.  This hardly amounts to meaningful progress amounting to an "exceptional circumstance" weighing in favor of a stay. *See Travelers*, 914 F.2d at 1369 (finding that a stay was improperly granted because "at the time of the district court's stay order the state court had made no rulings whatsoever in regard to th[e] dispute.").  Indeed, in an effort to advance efficiencies, Plaintiffs' counsel in the Federal Class Action immediately contacted both Defendants' counsel and plaintiffs' counsel in the Delaware Derivative Action to coordinate discovery.  *See* Declaration of Frank J. Johnson in support of Memorandum of Points and Authorities in Opposition to Defendants' Motion for a Stay at ¶7. Toward that end, Defendants have agreed to produce the same documents to Plaintiffs in the Federal Class Action and cooperate on scheduling depositions, if and when that becomes an issue.  *Id.* at ¶8.

### (e)        Whether State or Federal Law Controls

Defendants' also erroneously assert that this Court should ignore its "virtually unflagging obligation" to exercise its jurisdiction over this case and grant a stay simply because Delaware corporate law applies.  In doing so, Defendants forget that the decision of a federal court whether

to abstain is a matter of federal procedural law, not Delaware law.  Defendants cite over a page of Delaware case law espousing the interests of Delaware in hearing cases arising under Delaware law.  Defs.' Br. at 11-12.  But the operative question is not whether Delaware has a significant interest in hearing such cases, but whether "exceptional circumstances" exist to justify the federal Court's declination to exercise its own jurisdiction.  The cases of this jurisdiction counsel that no such circumstances exist here.

To justify a stay under this *Colorado River* factor, the case must present "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar."  *Gross v. Weingarten*, 217 F.3d 208, 224 (4th Cir. 2000).  In *Gross*, the Fourth Circuit considered whether the district court should have stayed an action involving claims by shareholders against directors of a bank for, among other things, breaches of fiduciary duties and fraud, as well as counterclaims by defendants for exoneration, indemnification, and contribution.  *Id.* at 211.  While many of the claims involved matters of exclusive federal jurisdiction, many others were governed by Virginia corporate and insurance law.  *Id.*  In finding that a stay of the action by the federal court in favor of a concurrently pending state action was not warranted as to the claims governed by Virginia law, the Fourth Circuit found that "[t]he individual defendants' claims are routine contribution and indemnification claims whose significance is entirely limited to this case."  *Id.* at 224.  Similarly, this case presents run-of-the-mill legal questions regarding director fiduciary duties under Delaware law in the common scenario of a proposed merger of two companies.  It presents neither "difficult questions of state law" nor "policy problems . . . whose importance transcends the result in the case at bar."  *Id.*; *see also Quackenbush v. All-State Ins. Corp.*, 517 U.S. 706, 729 (1996) (denying stay because defendant's claim for setoff against insolvent insurer was "a

-16-

run-of-the-mill contract dispute.").  Thus, this factor also demonstrates that no "exceptional circumstances" exist to justify a stay.

        **(f)**        **Whether the State Action Can Adequately Protect the Parties' Rights**

        Defendants also point to the sixth factor in the *Colorado River* analysis – whether the state action can adequately protect the parties' rights – as support for a stay.  While Plaintiffs do not argue that Delaware substantive law applies, serious doubts exist as to whether the Delaware Derivative Action here will adequately protect the parties' interests in this case.  As demonstrated above, the primary thrust of the Delaware Derivative Action is derivative in nature; the allegations and claims challenging the Proposed Merger are merely ancillary.  This concern alone cautions against granting a stay, because the Delaware Derivative Action is likely not to be "an adequate vehicle for the complete and prompt resolution of the issues."  *Moses H. Cone Mem'l. Hosp.*, 460 U.S. at 28.

## IV.     CONCLUSION

As discussed above, this Court should not ignore its virtually unflagging obligation to exercise its jurisdiction over this class action against Massey in favor of a derivative action on behalf of Massey pending in Delaware.  First, Defendants have failed to satisfy their burden of proof that the two cases are "substantially similar" under the applicable case law.  Second, even if the two cases were sufficiently similar, Defendants have failed in their burden to establish "exceptional circumstances" necessary to grant such relief.  For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Stay Proceedings in its entirety.

                                                    Respectfully submitted,

Dated: March 23, 2011                   FINKELSTEIN THOMPSON LLP

                                                    /s/
                                                    SHIVA SHARIFAHMADIAN
                                                    (VSB # 75411)
                                                    KAREN J. MARCUS (VSB # 48531)
                                                    The Duvall Foundry
                                                    1050 30th Street, N.W.
                                                    Washington, DC 20007
                                                    E-mail: ssharif@finkelsteinthompson.com
                                                    Telephone: (202) 337-8000
                                                    Facsimile: (202) 337-8090

                                                    /s/
                                                    JOHNSON BOTTINI, LLP
                                                    FRANK J. JOHNSON (admitted *pro hac vice*)
                                                    SHAWN E. FIELDS (admitted *pro hac vice*)
                                                    501 West Broadway, Suite 1720
                                                    San Diego, CA  92101
                                                    Telephone: (619) 230-0063
                                                    Facsimile: (619) 238-0622

                                                    /s/
                                                    THE BRISCOE LAW FIRM, PLLC
                                                    WILLIE C. BRISCOE
                                                    8117 Preston Road, Suite 300
                                                    Dallas, TX 75225
                                                    Telephone: (214) 706-9314
                                                    Facsimile: (214) 706-9315

/s/
POWERS TAYLOR, LLP
PATRICK W. POWERS
Campbell Centre II
8150 N. Central Expressway, Suite 1575
Dallas, TX 75206
Telephone: (214) 239-8900
Facsimile: (214) 239-8901

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 23nd day of March, 2011, the foregoing Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Stay Proceedings Pending Resolution of the Same Shareholder Class Action Claims Pending before the Delaware Chancery Court, was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record, and was also served by e-mail on the following counsel of record:

Steven E. Baril
Sands Anderson PC
Post Office Box 1998
Richmond, VA 23218-1998
SBaril@SandsAnderson.com
Tel: (804) 783-7234

*Counsel to Defendant Baxter F. Phillips, Jr.*


Robert M. Rolfe
Hunton and Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  2319
rrolfe@hunton.com
Tel:  (804) 788-8466

*Counsel to Alpha Natural Resources, Inc.*


Timothly J. St. George
Troutman Sanders
1001 Haxall Point
Richmond, VA  23219
tim.stgeorge@troutmansanders.com
Tel:  (804) 697-1200

*Counsel to Defendants*
 *James B. Crawford, Robert H. Foglesong,*
*Richard M. Gabrys, Robert B. Holland, Bobby R.*
*Inman, Dan R. Moore, Stanley C. Suboleski,*
*Linda J. Welty and Massey Energy Company*

Frank J. Johnson
Shawn Fields
Johnson Bottini, LLP
501 W. Broadway, Suite 1720
San Diego, CA  92101
frankj@johnsonbottini.com
shawnf@johnsonbottini.com
Tel:  (619) 230-0063

Hamilton Lindley
Goldfarb Branham LLP
2501 N. Harwood Street, Suite 1801
Dallas, TX  75201
hlindley@goldfarbbranham.com
Tel:  (877) 583-2855

*Counsel for Plaintiffs William D. Perkins*
  *and Benjamin Mostaed*


By:    ___/s/_____
       Shiva Sharifahmadian (VSB # 75411)
       FINKELSTEIN THOMPSON LLP
       1050 30th Street NW
       Washington, D.C. 20007
       E-mail: ssharif@finkelsteinthompson.com
       Telephone: (202) 337-8000
       Facsimile: (202) 337-8090