EFiled: May 12 2011 3:20PM EDT
Transaction ID 37348445
Case No. 5430-VCS

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| In re MASSEY ENERGY COMPANY DERIVATIVE AND CLASS ACTION LITIGATION | ) ) ) ) ) ) ) ) Case No. 5430-VCS |

**YOU ARE IN POSSESSION OF A DOCUMENT FILED IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE THAT IS CONFIDENTIAL AND FILED UNDER SEAL**

**CO-LEAD PLAINTIFFS' VERIFIED SHAREHOLDER THIRD AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**

IF YOU ARE NOT AUTHORIZED BY COURT ORDER TO VIEW OR RETRIEVE THIS DOCUMENT READ NO FURTHER THAN THIS PAGE. YOU SHOULD CONTACT THE FOLLOWING PERSON(S).

MILBERG LLP

Anita Kartalopoulos
Benjamin Y. Kaufman
Andrei V. Rado
Elizabeth S. Metcalf
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

*Co-Lead Counsel for Plaintiffs*

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP

Mark Lebovitch
Amy Miller
Jeremy Friedman
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

*Co-Lead Counsel for Plaintiffs*

GRANT & EISENHOFER P.A.

*/s/ Stuart M. Grant*
Stuart M. Grant (Del. ID No. 2526)
Cynthia A. Calder (Del. ID No. 2978)
Abraham Alexander (Del. ID No. 5425)
1201 North Market Street, Suite 2100
Wilmington, DE 19801
(302) 622-7000

*Co-Lead Counsel for Plaintiffs*


EXHIBIT C

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

the sales process came at a time when not only was Massey still reeling from the aftermath of the UBB disaster, it was also suffering quarter after quarter of operating losses. The process took approximately two months from formation of the Strategic Committee to signing a merger agreement with Alpha – hardly a robust sales process – and the shareholder vote on the merger is scheduled for June 1, 2011. The outcome of the process – a sale price with no downside protection and a deal with no go-shop period – is additional proof of the Board's scramble to eliminate their own liability and Alpha's opportunism

### D. THE PRELIMINARY PROXY STATEMENT CONTAINS MATERIALLY MISLEADING AND INCOMPLETE DISCLOSURES

117. On March 17, 2011, Massey and Alpha filed with the SEC a preliminary joint proxy statement on Form S-4. Subsequently, Massey and Alpha filed two amendments to the Proxy, Amendment No. 1 filed on April 12, 2011 and Amendment No. 2 filed on April 21, 2011. On April 29, 2011, Alpha and Massey caused to be filed a Schedule 14A Proxy Statement (collectively, the "Proxy").

118. The Proxy fails to provide Massey's shareholders with material information and/or provides them with materially misleading information which precludes the shareholders from casting an informed vote regarding the merger with Alpha.

119. In addition to misleading the shareholders, the "Background of the Merger" section (the "Background Section") of the Proxy leaves many material questions unanswered.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

120. Among other things, the Background Section does not disclose the "other factors" in addition to price considered by Massey's Board to determine whether or not a business combination was in the best interests of Massey stockholders. The Proxy merely states that on August 23, 2010 "Mr. Blankenship noted that the board of directors of Massey would consider 'other factors' in addition to price when determining whether or not a potential business combination was in the best interests of Massey stockholders" but does not disclose whether these "other factors" included the nearly $7 million payment to Massey's Board included in the merger or the assumption of all legal liabilities by Alpha, including the shareholder derivative claims.

121. Additionally, the Background Section does not offer an explanation as to why defendant Inman took the principal role in negotiating the transaction with Alpha over Defendant Blankenship, nor whether this change took place because Blankenship opposed the proposed merger.

122. The Proxy is also deficient in its disclosure of material financial information relating to the present and future value of the Company. Although the Proxy discloses certain of Perella's conclusions and recommendations, it omits material information about the assumptions used to support their various analyses. The Proxy does not disclose the underlying methodologies, projections, key inputs and multiples relied upon and observed by Perella in support of the Fairness Opinion concerning the Proposed Transaction. Furthermore, the Proxy does not disclose whether the methodologies, projections, key inputs and multiples relied upon by Perella are the same

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

methodologies, projections, key inputs and multiples relied upon by the Strategic Committee. This information is material to shareholders so they can properly assess the credibility of the various analyses performed by Perella and relied upon by the Board in recommending the Proposed Transaction.

123. For example:

(a) The Proxy does not disclose whether the future projections of Massey's earnings considered by Perella were the same set of future projections of Massey's earnings considered by the Strategic Committee when determining whether to approve the merger. The Proxy does not disclose whether these future projections are the same or if Perella was provided with a different, perhaps summary set of projections.

(b) The Proxy does not disclose whether the internal forecasts of Massey's future growth from 2011-2015 that Perella used in its discounted cash flow analysis were the same forecasts considered by the Strategic Committee.

124. The Proxy also fails to sufficiently disclose material elements of the analyses undertaken by the Company and Perella to value the Company. For example:

(a) the number and nature of analyses and analysts' targets Perella considered in determining Massey's value on a stand-alone basis if no acquisition occurred.

(b) An explanation as to why Massey chose the multiples range and the actual historical ratios Perella considered in conducting its illustrative future share price.

**THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.**

(c) With respect to Perella's analyses of Massey's value as a company in a transaction such as the merger, the numbers used by Perella in conducting an analysis of Massey's value based on the enterprise value of EBITDA from the last twelve months before the merger was announced and the historical financial data Perella used to derive a multiples range.

(d) The statistics and financial data from the eighteen groups of similar transactions analyzed by Perella in conducting its "premium paid statistics analysis" to determine Massey's value in a potential transaction.

(e) An explanation as to how Perella derived a discount rate of return on equity for Massey of 14.5% when Morgan Stanley derived a discount rate of return on equity of only 11%.

125. Accordingly, Plaintiffs seek injunctive and other equitable relief to prevent the irreparable injury that Massey shareholders will continue to suffer absent judicial intervention.

### E. THE BOARD REWARDS BLANKENSHIP FOR HIS MISDEEDS

126. In the face of countless violations, fines and deaths at Massey's mining facilities while under the leadership of defendant Blankenship, the Director Defendants once again rewarded Blankenship instead of holding him accountable.

127. On December 3, 2010, Blankenship entered into a retirement agreement with the Company (the "Retirement Agreement") that called for, but was not limited to, the payment of $12 million, $5,000 a month under a two year consulting agreement, two

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

    (vii) Awarding Plaintiffs their costs and disbursements and reasonable allowances for fees of Plaintiffs' counsel and experts and reimbursement of expenses; and

    (viii) Granting Plaintiffs, the Class and Massey such other and further relief as the Court may deem just and proper.

Dated: May 12, 2011

| | |
|---|---|
| | */s/ Stuart M. Grant* |
| OF COUNSEL: | Stuart M. Grant (#2526) |
| Mark Lebovitch | Cynthia A. Calder (#2978) |
| Amy Miller | Abraham Alexander (#5425) |
| Jeremy Friedman | GRANT & EISENHOFER |
| BERNSTEIN LITOWITZ BERGER | 1201 N. Market Street |
|  & GROSSMANN LLP | Wilmington, Delaware 19801 |
| 1285 Avenue of the Americas | (302) 622-7000 |
| New York, New York 10019 | |
| (212) 554-1400 | *Co-Lead Counsel for Plaintiffs* |

*Co-Lead Counsel for Plaintiffs*

Anita Kartalopoulos
Benjamin Y. Kaufman
Kent A. Bronson
Andrei V. Rado
Elizabeth S. Metcalf
MILBERG LLP
One Pennsylvania Plaza
New York, New York
(212) 594-5300

*Co-Lead Counsel for Plaintiffs*

**THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.**

Nadeem Faruqi
Beth A. Keller
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, New York  10017
(212) 983-9330

*Co-Lead Counsel for Plaintiffs*

**THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.  REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.**