IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
------------------------------------------------  X
Benjamin Mostaed, on behalf of himself and      :
all others similarly situated,                  :
                                                :     No. 3:11-CV-079-REP
                  Plaintiffs,                   :
                                                :
          vs.                                   :
                                                :
James B. Crawford, Robert H. Foglesong,         :
Richard M. Gabrys, Robert B. Holland,           :
Bobby R. Inman, Dan R. Moore, Baxter F.         :
Phillips, Jr., Stanley C. Suboleski, Linda J.   :
Welty, Massey Energy Company, and Alpha         :
Natural Resources, Inc.,                        :
                                                :
                  Defendants.                   :
                                                :
------------------------------------------------  X
```

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
MOSTAED'S MOTION FOR AN AWARD OF ATTORNEYS' FEES,
<u>REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARDS</u>**

## TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | iii |
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 4 |
|     A.   Massey, the Merger and the Proxy | 4 |
|     B.   The Delaware Litigation | 7 |
|     C.   The Virginia Litigation | 8 |
| ARGUMENT | 10 |
|     I.   AS A MATTER OF LAW NO FEE AWARD IS JUSTIFIED | 10 |
|         A.   Federal Law Prohibits an Award of Attorneys' Fees in This Case | 10 |
|         B.   Plaintiffs Are Entitled to No Fee under Delaware Law | 11 |
|             1.   Plaintiffs' Disclosure Claims Were Not Meritorious When Filed | 12 |
|                 a.   The Disclosure Claims Were Not Meritorious When Filed Because They Attacked A *Draft* | 13 |
|                 b.   Plaintiffs Cannot Establish an Injury, or That the March 17 Draft Preliminary Proxy Was an Essential Link to Completing the Merger | 15 |
|             2.   Plaintiffs Alleged No Material Omissions and Did Not Obtain Material Disclosures Benefiting Massey Shareholders | 15 |
|     II.   AT MOST, PLAINTIFFS ARE ENTITLED TO A SMALL FRACTION OF THE FEES THEY REQUEST | 19 |
|         A.   Mostaed's Counsel Has Failed to Submit Adequate Documentation for His Requested Fees, And They Should Be Denied for That Reason | 21 |

B.   Mostaed's Counsel Is, At Most, Entitled to Fees for
Work Directly Related to the Preparation and Filing
of The Amended Complaint............................................................ 21

C.   Only A Small Fraction of The Work Plaintiffs Claim
They Did Relates to The Amended Complaint............................... 23

D.   No Multiplier Is Warranted Here.................................................... 25

E.   No Award Should Be Made For Expenses ..................................... 28

III.   MOSTAED AND PERKINS ARE NOT ENTITLED TO AN
INCENTIVE AWARD .............................................................................. 29

CONCLUSION............................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

15 U.S.C. § 78u-4(a) ................................................................................... 11, 29

17 C.F.R. § 240.14(a)-6(e) ........................................................................... 2, 12-13

Fed. R. Civ. P. 15(a) .................................................................................... 11

**Cases**

Domonoske v. Bank of America, N.A.,
No. 5:08cv00066, 2011 U.S. Dist LEXIS 66056 (W.D. Va. June 14, 2011) ..................... 30

Globis Capital P'rs, LP v. SafeNet, Inc.,
C.A. 2772-VCS, 2007 Del. Ch. LEXIS 237 (Del. Ch. Dec. 20, 2007)............................... 27

Grissom v. The Mills Corp.,
549 F.3d 313 (4th Cir. 2008) ........................................................................ 23-24

Hayes v. Crown Cent. Petroleum Corp.,
78 F. App'x 857 (4th Cir. 2003) ..................................................................... 13, 15

Hensley v. Eckerhart,
461 U.S. 424 (1983).................................................................................... 21

In re BEA Sys., Inc. S'holder Litig.,
C.A. No. 3298-VCL, 2009 WL 1931641 (Del. Ch. June 24, 2009) ................................... 19, 21, 27-28

In re Conklin,
946 F.2d 306 (4th Cir. 1991) ........................................................................ 21

In re Del Monte Foods Co. S'holders Litig.,
C.A. No. 6027-VCL, 2011 WL 2535256 (Del. Ch. June 27, 2011) ................................... 20

In re Massey Energy Co. Deriv. & Class Action Litig.,
C.A. No. 5430-VCS, 2011 WL 2176479 (Del. Ch. May 31, 2011) ................................... 7-8

In re Microstrategy Sec. Litig.,
172 F. Supp. 2d 778 (E.D. Va. 2001) ................................................................ 26

In re Nat'l City Corp. S'holders Litig.,
No. 4123-CC, 2009 WL 2425389 (Del. Ch. July 31, 2009) .................................. 19

In re NCS Healthcare Inc. S'holders Litig.,
No. 19786, 2003 Del. Ch. LEXIS 56 (Del. Ch. May 28, 2003) ......................................... 25

In re Plains Res. Inc. S'holders Litig.,
    No. Civ. A. 071-N, 2005 WL 332811 (Del. Ch. Feb. 4, 2005) ......................... 12, 28

In re Sauer-Danfoss Inc. S'holders Litig.,
    C.A. No. 5162-VCL, 2011 Del. Ch. LEXIS 64 (Del. Ch. Apr. 29, 2011)........................ passim

In re Triarc Cos. S'holders Litig.,
    No. Civ. A. 16700, 2006 WL 903338 (Del. Ch. Mar. 29, 2006) ....................... passim

Initio, Inc. v. Hesse,
    474 F. Supp. 312 (D. Del. 1979) ...................................................... 13

Lichtenberg v. Besicorp Grp., Inc.,
    43 F. Supp. 2d 376 (S.D.N.Y. 1999)................................................... 15

Mills v. Elec. Auto-Lite Co.,
    396 U.S. 375 (1970)................................................................... 15

Plyer v. Evatt
    902 F.2d 273 (4th Cir. 1990) ........................................................ 21

Rodriguez v. West Publ'g Corp.,
    563 F.3d 948 (9th Cir. 2009) ........................................................ 29

Rosan v. Chicago Milwaukee Corp.,
    Civ. A. No. 10526, 1994 WL 30524 (Del. Ch. Jan. 19, 1994) ......................... 15

Sigram Schindler Beteiligungsgesellschaft MBH v. Kappos,
    675 F. Supp. 2d 629 (E.D. Va. 2009) ................................................ 14

Skeen v. Joann-Stores, Inc.,
    750 A.2d 1170 (Del. 2000) .......................................................... 15

Stroud v. Grace,
    606 A.2d 75 (Del. 1992) ............................................................ 13

Stroud v. Milliken Enterprises, Inc.,
    C.A. No. 8969, 1990 Del. Ch. LEXIS 122 (De. Ch. Aug. 2, 1990)

Trimper v. City of Norfolk,
    58 F.3d 68 (4th Cir. 1995) .......................................................... 28

TSC Indus., Inc., v. Northway, Inc.,
    426 U.S. 438 (1976)................................................................. 19

Defendants respectfully submit this memorandum in opposition to Plaintiffs' Motion for An Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards (the "Fee Request").

## PRELIMINARY STATEMENT

One is tempted to use blunt language when considering how to characterize an application for fees and expenses approaching $1 million in a case in which plaintiff ("Mostaed") not only achieved no judicial victory, but did not even attempt to achieve one. Despite racing to file pleadings asserting that a class of shareholders would suffer irreparable harm absent immediate relief, Mostaed's counsel never filed a motion for affirmative relief of any kind, and served no discovery requests until after they now assert they "ha[d] succeeded in the goals of the litigation"[1] (and those discovery requests were improperly served, stayed by the Court, and never later pursued). This refrain from traditional litigation presumably reflected plaintiff's own assessment of the merits of the claims asserted in his name. Indeed, apart from this demand for compensation, Mostaed has announced that he and his counsel have no further interest in this case, and will dismiss it. Pl. Fee Br. at 2 n.4.[2]

The sole basis for the windfall that Mostaed's counsel demand is that their amended complaint (the "Amended Complaint") contended that a draft proxy statement filed with the SEC

---

[1]     Memorandum of Points and Authorities in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards ("Pl. Fee Br.") at 2.

[2]     Nevertheless, last week Mostaed moved to be appointed "lead plaintiff" and for his lawyers to be appointed "lead counsel," asserting in the accompanying memorandum that they "will adequately represent the interests of all class members." Mem. of P. & A. in Supp. of Pl. Benjamin Mostaed's Mot. for Appointment as Lead Pl. and Approval of His Selection of Lead and Liaison Counsel 2, ECF No. 63 ("Mot. For Appointment Br."). Mostaed having represented to the Court that there is no point in pursuing this case, and that it will be dismissed once the Court determines this fee request – the Court is entitled to an explanation why it was burdened with the appointment motion, and how Mostaed and his counsel intend to represent a class when the only thing further they will do is prosecute their request for personal compensation.

staff for its review and comment, and never sent to shareholders to solicit votes, omitted some information the amended pleading asserted should have been included, and because – after several revisions to that draft that were similarly sent to the SEC staff for review and comment – the definitive proxy statement that was actually sent to shareholders contained some of that information.   In this application, counsel asserts that their efforts were responsible for this development, which "mooted" Mostaed's disclosure claims, and that they should accordingly be very richly rewarded for their efforts.

The law is decidedly otherwise:

- The disclosure allegations made in Mostaed's amended complaint were brought under the Securities Exchange Act of 1934 (the "Exchange Act"), which unambiguously permits a fee award only where the plaintiff achieves a monetary recovery; there was none here.

- Challenging a draft proxy statement does not state a claim under Section 14(a) and Rule 14a-9 as a matter of law. Drafts are filed with the SEC solely to permit the Commission's staff to review them. Although such drafts are available to the public (on the SEC's website), they are not – and cannot be – used to solicit votes, and prominently so state (in boldface and red ink).

- None of the disclosures for which Mostaed seeks to take credit conferred a material benefit to shareholders.   The Board of Directors of Massey Energy Company ("Massey") urged Massey shareholders to vote for the proposed merger with Alpha Natural Resources, Inc. ("Alpha"), and the definitive proxy statement mailed to Massey shareholders (as well as all of the drafts) set forth at length why Massey shareholders should approve Alpha's $7.1 billion offer – including that it was the result of a public auction in which Alpha's price exceeded that of the next highest bidder by more than $1 billion.   The disclosures Mostaed contends he deserves credit for merely gave additional bases for voting precisely how the Massey Board recommended – in favor of the merger.   Causing the disclosure of additional facts that merely "more fully informed Massey's shareholders regarding the Merger," Pl. Fee Br. at 11, at most was a minimal benefit, as numerous courts have held.

- Even where applicable law permits fee shifting, it is only to compensate for the benefits actually achieved, and at fair rates.   Yet counsel seeks compensation for apparently every hour allegedly spent – virtually all of which did not achieve anything – at multiplier rates exceeding $1000 per hour, even for junior associates.   Black letter law holds that the drafting of the original complaint

(which achieved nothing, since every claim it made has been abandoned without redress), internecine fighting among the competing plaintiffs, time spent reviewing documents (all of which were produced in an action proceeding in Delaware), the drafting of documents never served, attendance (as spectators) at proceedings in the Delaware case, and the like, are not compensable.

- The only work counsel did that even arguably produced a benefit was the drafting of the Amended Complaint. The lack of coherent time records submitted makes it impossible to know how much time was actually spent on that task. Giving counsel the benefit of every assumption (and ignoring obvious errors in their calculations), the amendment (which only added a dozen pages to the pleading) took at most a total of 57.1 hours, out of the 729.1 total hours for which counsel seeks compensation. And assuming that only the most senior lawyers at the firms did the drafting and that the non-multiplied rates they seek are reasonable, that would yield an award of $30,777.50.

- There is no legal grounds for awarding an "incentive" award to Mostaed, much less to the other plaintiff ("Perkins") on whose behalf Mostaed's counsel filed a wholly duplicative action in this Court that did not even assert disclosure claims.

Further, in exercising its discretion whether to make any award, the Court must consider some very troubling aspects about the fee application. Compensation is demanded for time spent on events that never happened – like "confirmatory discovery," the "conduct of depositions," and preparing for and attending a "preliminary approval hearing."[3]   Similarly, counsel seeks compensation for over 52 hours spent in connection with the pre-trial conference this Court conducted on June 2, 2011, which lasted less than an hour, and their attendance at the four hour preliminary injunction argument in Delaware in which they watched other counsel actually litigate the claims made in this case.[4] The application also represents that counsel does not seek compensation for the time spent preparing it, Johnson Decl. ¶ 59, but in fact seeks recovery for 139.5 hours that includes time for "preparation of motion for award of attorneys' fees and incentive awards." Id. ¶ 60. Finally the application represents that "in the Settlement Agreement

---

[3]   Declaration of Douglas G. Thompson ("Thompson Decl.") ¶ 5.

[4]   Declaration of Frank J. Johnson ("Johnson Decl.") ¶ 60; Declaration of Mitchell A. Lowenthal ("Lowenthal Decl.") ¶ 2.

[defendants conceded] that Plaintiffs' Counsel were the sole cause in Defendants' decision to make the additional disclosures," id. ¶ 78, even though no such concession was ever made nor was any "settlement agreement" or settlement of any kind ever reached, and the "extensive, arm's length" negotiations Mostaed mentions, id. ¶ 49, comprised brief phone conversations on two days – both of which occurred after Mostaed announced his decision to "voluntarily dismiss" the case, id. ¶ 48, and solely concerned counsel's request for fees. Id. ¶ 49; Lowenthal Decl. ¶ 4.

The motion should be denied.

## STATEMENT OF FACTS

### A. Massey, the Merger and the Proxy

Prior to June 1, 2011, Massey was a publicly traded coal company. In April of 2010 there was an explosion at one of its mines ("UBB") and a tragic loss of life.

In Fall 2010, Massey engaged in a serious process to consider, among other things, whether it should remain as an independent public company or should consider a sale of the company to a third party. In connection with that process, it appointed a Strategic Alternatives Review Committee (the "Committee") of its Board of Directors to analyze strategic alternatives, and the Committee hired financial advisors – Perella Weinberg Partners LP ("Perella Weinberg"). Massey disclosed these steps to the public, and conducted an auction for interested bidders in December 2010 and January 2011. Multiple bidders, including Alpha, participated in the auction by submitting proposals to acquire Massey.[5] As a result of this competitive process,

---

[5]    See Declaration of Lisa Coyle ("Coyle Decl.") Ex. C, Alpha Natural Res. Inc., Definitive Proxy Statement at 77, 78, 82 (Form 424B3) (Apr. 29, 2011) ("Def. Proxy").

Alpha raised its offer four times.[6]

Alpha ultimately reached an agreement with Massey's Board of Directors on January 28,

2011 (the "Merger Agreement"). There, Alpha offered to purchase Massey for 1.025 shares of

Alpha common stock and $10.00 in cash per share of Massey common stock, for total

consideration of $69.33 per Massey share, or about $7.1 billion (based on the closing share price

of Alpha's common stock on the date of the Merger Agreement).[7]

The proposed merger was announced on January 29, 2011,[8] and the Merger Agreement

itself was publicly filed.[9] Because the proposed merger was subject to shareholder approval, a

proxy statement was necessary. As required by federal law, on March 17 a draft was submitted

to the SEC for review by its staff (the "March 17 Draft Preliminary Proxy"), which (among other

things) discussed the background of the proposed merger, described why the Massey Board of

Directors recommended that its shareholders vote for the merger, described the advice the full

Board had received from Perella Weinberg, and included as Annex D the written opinion of

Perrella Weinberg that the proposed merger was fair, from a financial point of view, to Massey

shareholders (the "Fairness Opinion"). The Fairness Opinion stated that Perrella Weinberg's

---

[6]     Def. Proxy (Coyle Decl. Ex. C) at 68-69 (describing two non-binding proposals
submitted by Alpha prior to the launch of the Auction for $37, then $41 per Massey share), 77
(discussing Alpha's revised proposal for $60.51 per Massey share), 81-82 (Alpha increased its
proposal to $65.00 per share in response to Massey's request for "best and final offers"), 83-84
(describing Alpha's final increased offer, which was ultimately accepted by both companies'
boards).

[7]     Def. Proxy (Coyle Decl. Ex. C) at 83, 115.

[8]     Press Release, Alpha Natural Res. Inc., Alpha Natural Resources and Massey Energy
Agree to $8.5 Billion Combination (Jan. 29, 2011), Ex. 1 to Reents Decl. of Mar. 11, 2011, ECF
No. 12-2.

[9]     Alpha Natural Res., Agreement and Plan of Merger, Current Report Ex. 2.1 (Form 8-K)
(Jan.    31,    2011),    *available    at*    http://www.sec.gov/Archives/edgar/data/1301063/
000130106311000010/exhibit21.htm ("Merger Agmt.").

work included a "compar[ison of] the financial performance of [Massey] and [Alpha] with that of certain publicly-traded companies which we believe[d] to be generally relevant."[10]   An explicit description of this analysis, however, was inadvertently omitted from the body of the draft proxy. See Grader Decl. ¶ 5.

The SEC provided comments on the initial draft proxy,[11] and a second draft proxy was filed with the SEC on April 12 (the "April 12 Draft Preliminary Proxy").  That April 12 draft responded to the SEC staff's comments.  It also included the comparable company analysis in the body of the proxy.  Grader Decl. ¶ 6.  The process continued with the SEC staff providing further comments on the April 12 draft, and the filing of another draft proxy statement with the SEC on April 21, 2011 (the "April 21 Draft Preliminary Proxy").

Under federal law, no proxies can be solicited until the SEC declares a proxy statement "effective."  There is no allegation that any proxies were solicited here based upon any of the drafts, which were simply filed with the SEC and never mailed to shareholders.  The SEC declared the proxy statement effective on April 28, 2011, and the definitive proxy statement (the "Definitive Proxy") was distributed to Massey shareholders the following day.  At a meeting of Massey shareholders held on June 1, over 99% of those voting voted in favor of the proposed merger, and it closed later that day when an Alpha subsidiary merged with and into Massey.[12]

---

[10]     Coyle Decl. Ex. A, Alpha Natural Res. Inc., Preliminary Proxy Statement at D-2 (Form S-4) (Mar. 17, 2011) ("March 17 Draft Preliminary Proxy").

[11]     Coyle Decl. Ex. D, Letter from H. Roger Schwall, Assistant Director, Division of Corporate Finance, U.S. Securities & Exchange Commission, to Vaughn R. Groves, Executive Vice President, General Counsel, and Secretary, Alpha Natural Resources, Inc. (Apr. 8, 2011) ("SEC Letter of Apr. 8, 2011").

[12]     Thereafter, Massey's name was changed to Alpha Appalachia Holdings, Inc.   For purposes of this brief, however, all entities will be referred to by their pre-merger names.

## B. **The Delaware Litigation**

Shortly after the UBB explosion, certain Massey shareholders filed suit in the Delaware Court of Chancery (the "Delaware Litigation"). On behalf of Massey, they brought derivative claims against several then current and former Massey directors and officers accusing them of breaching their fiduciary duties and thereby causing the UBB explosion. In re Massey Energy Co. Deriv. & Class Action Litig., C.A. No. 5430-VCS, 2011 WL 2176479 (Del. Ch. May 31, 2011) ("In re Massey Energy").[13] Following the announcement of the proposed merger, those plaintiffs amended their complaint to include direct claims, on behalf of a class of Massey shareholders, against Massey's then Board of Directors (the "Delaware SAC") and sought to enjoin the proposed merger.[14] The class claims alleged the directors had breached their fiduciary duties by approving the Merger Agreement, which allegedly contained unfair terms, including an inadequate price, and was allegedly motivated by the desire to extinguish the derivative claims.[15] The Delaware plaintiffs made further amendments to their pleading, including by alleging that the proxy statement omitted material information.

The Delaware plaintiffs engaged in substantial litigation. They moved for a preliminary injunction, secured an order of expedition, served several series of document requests and interrogatories, obtained tens of thousands of documents, deposed nearly a dozen witnesses in several states, fully briefed a motion for a preliminary injunction, and argued that motion before then Vice Chancellor (now Chancellor) Strine of the Court of Chancery. That motion was resolved in a written opinion that spanned nearly 80 pages. The Delaware court denied the

---

[13]    See Pl.'s Mot. for Leave to Amend the Verified S'holder Consol. Deriv. Compl. ¶¶ 1-2 ("Motion to Amend"), Ex. 2 to Reents Decl. of Mar. 11, 2011, ECF No. 12-2.

[14]    Motion to Amend ¶¶ 1, 3, 5.

[15]    Delaware SAC ¶¶ 3, 198, 205, Ex. 7 to Coyle Reply Decl. of March 28, 2011, ECF 17.2.

preliminary injunction, and held that the "issuance of an injunction threaten[ed] more harm to Massey stockholders than its potential benefits to them." In re Massey Energy, 2011 WL 2176479, at \*32. Notably, on the issue of the adequacy of the disclosure in the Definitive Proxy, the Court ruled that the plaintiffs had not "come close to establishing a reasonable probability of success on the merits on their claim that the Massey directors breached their fiduciary duties by failing to disclose all material information in the definitive proxy statement." Id. at \*14.

## C. The Virginia Litigation

Mostaed's litigation efforts pale in comparison to those in Delaware. He filed a complaint on February 2, 2011 (the "Initial Complaint") asserting the same core set of claims against the same defendants on behalf of the same plaintiff class as in the Delaware SAC. Aware of the Delaware Litigation (indeed, Mostaed also argued that the proposed merger was motivated by the desire to eliminate the derivative claims pending in Delaware), he filed his own lawsuit and pleaded that there should and could be only one case prosecuting the claims he was asserting,[16] and still permitted his counsel two days after the filing of the Initial Complaint to file a wholly duplicative lawsuit in this Court on behalf of the same class against the same defendants seeking the same relief (the "Perkins Complaint"). The Mostaed and Perkins complaints each contended the class was being irreparably harmed, and demanded a preliminary injunction enjoining the proposed merger. And, on this fee application, Mostaed states that time was "of the essence" because of the "narrow window of time" between the announcement of a merger and the shareholder vote. Johnson Decl. ¶ 10. Yet as the Court's docket attests, at no time did Mostaed (or Perkins) act as if they believed their own allegations; they served no

---

[16]    See Initial Compl. ¶ 56 (stating that plaintiffs seek class certification because the prosecution of separate actions by individual members of the class would create a risk of inconsistent adjudications and prejudice the defendants by exposing them to rulings requiring "incompatible standards of conduct").

discovery, nor filed any motion for preliminary injunctive or other relief, nor took any steps other than to ensure (through the agreement of defense counsel[17]) that they could piggy back off of the work being done by the Delaware plaintiffs. Indeed, before this fee request the only motion they filed was one seeking to consolidate Perkins and Mostaed, which hardly required great effort given that both had common counsel and Defendants did not oppose the motion. Despite the complete overlap between the Delaware case and their own, and their pleaded representation that the claims could only proceed before a single court, Mostaed nevertheless opposed a motion to stay his case in favor of the Delaware Litigation.

Weeks later, on April 4, Mostaed filed the Amended Complaint. It criticized the March 17 Draft Preliminary Proxy, adding claims under Sections 14(a) and 20(a) of the Exchange Act. While Mostaed's papers imply that these allegations were crafted only after the review of hundreds of thousands of pages of documents (all of which had been demanded in Delaware and then voluntarily produced by defense counsel to Mostaed), Pl. Fee Br. at 2, none were even sent to Mostaed's counsel until the day the Amended Complaint was filed,[18] and therefore could not have been the basis for the new allegations in the Amended Complaint. In fact, the Amended Complaint refers to no document other than the Merger Agreement and the March 17 Draft Preliminary Proxy – both of which had long been publicly available.

After filing the Amended Complaint, Mostaed still took no steps to prosecute this action. Counsel claims they concluded their "exhaustive, time-consuming, round-the-clock review of over 330,000 pages of documents" on May 10 (more than a month after the April 4 Amended Complaint was filed). Johnson Decl. ¶ 41. Even though the shareholder vote was scheduled for

---

[17]    Coyle Decl. ¶¶ 2, 4; Declaration of Stuart Gold ("Gold Decl.") ¶¶ 2, 4.

[18]    See Gold Decl. ¶ 5 (made first production April 4, 2011); Coyle Decl. ¶ 5; (made first production April 13, 2011).

just three weeks later, and briefing on the preliminary injunction motion in Delaware was well underway, Mostaed still did nothing – until on May 16 his counsel noticed what they now describe as "confirmatory" discovery (though confirmatory of what they do not say). Id. ¶ 43. The depositions they noticed were to take place on and after the day of the scheduled June 1 shareholder vote. The Court stayed the "confirmatory" discovery Mostaed served. Order, ECF No. 53.

Declaring victory, on June 23 Mostaed advised the Court of his decision to dismiss this case, subject to seeking to extract compensation for himself, Perkins and their counsel. Johnson Decl. ¶ 48.

## ARGUMENT

### I

### AS A MATTER OF LAW NO FEE AWARD IS JUSTIFIED

A.   Federal Law Prohibits an Award of Attorneys' Fees in This Case

The principal change made by the Amended Complaint was the addition of two claims under the Exchange Act (Counts I and II) which rested on purported defects in the March 17 Draft Preliminary Proxy. Am. Compl. ¶¶ 62-91. Indeed, the Court's subject matter jurisdiction purported to rest on those counts. Id. ¶ 11.[19] By pleading an Exchange Act claim on behalf of a class, Mostaed assumed statutory obligations under the Private Securities Litigation Reform Act ("PSLRA"), including the obligation to publish a notice to the class within 20 days of the filing

---

[19]   Without explanation, the Amended Complaint revealed that Mostaed was not a citizen of Ohio, as originally pleaded, but California. Compare Initial Compl. ¶ 12 with Am. Compl. ¶ 14.

of the class claim.  15 U.S.C. § 78u-4(a)(3)(A)(i).  While the Amended Complaint was filed on April 4, April 24 came and went without Mostaed having fulfilled his statutory obligation.[20]

Having invoked Exchange Act claims, Mostaed is foreclosed from seeking any fee award.  The PSLRA amended the Exchange Act in order to forestall the bringing of lawyer-driven cases designed primarily to compensate counsel, and prohibits the award of fees or expenses except where counsel's efforts have produced a monetary award actually paid to the class.  15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.") (emphasis added).  This law goes unmentioned in the Fee Request.

B.     Plaintiffs Are Entitled to No Fee under Delaware Law

Mostaed asks the Court instead to apply Delaware law.  He offers no explanation how or why the Court should ignore federal law.  If Mostaed wished to litigate in Delaware, he had every opportunity to do so, but he adamantly refused.  In any event, he would do no better had he proceeded there.

---

[20]     One explanation for this failure – though one Mostaed denies – is that his filing of the Amended Complaint was a nullity.  Under Fed. R. Civ. P. 15(a)(1), without Court approval (not sought or obtained here), an amended pleading cannot be filed more than 21 days after an original complaint and prior to any responsive pleading – precisely what Mostaed did here.  Defendants pointed this violation out to Mostaed.  Johnson Decl. ¶ 37.  Mr. Johnson says that his firm "thoroughly researched this issue and discussed at length with Defendants the incorrectness of their argument."  Id.  But there was nothing incorrect about it.  Rather than force unnecessary motion practice, Defendants agreed to deem the Amended Complaint to be filed "as of May 3."  Id.  By May 3, with the Amended Complaint solely mentioning the initial draft, the Definitive Proxy had already been mailed to shareholders and the shareholder vote on the proposed merger scheduled for June 1.

Defendants also advised Mostaed that if his Amended Complaint had been, as Mostaed contended, timely filed on April 4, he had violated the PSLRA notice provision.  In the appointment application Mostaed filed last week, he states that he sent that notice 20 days after May 3.  Mot. for Appointment Br. at 4.

Purely as a matter of judicial discretion, In re Plains Res. Inc. S'holders Litig., No. Civ. A. 071-N, 2005 WL 332811, at *3 (Del. Ch. Feb. 4, 2005), in narrowly drawn circumstances Delaware courts may award fees where, as here, no class has been certified and the only "benefit" achieved was additional disclosures:  the plaintiff must show that the suit was meritorious when filed; the relief sought was mooted before a judicial resolution; and the lawsuit caused a corporate benefit. In re Sauer-Danfoss Inc. S'holders Litig., Consol. C.A. No. 5162-VCL, 2011 Del. Ch. LEXIS 64 at *15 (Del. Ch. Apr. 29, 2011) (citing United Vanguard Fund, Inc. v. TakeCare, Inc., 693 A.2d 1076, 1079 (Del. 1997)).

1. Plaintiffs' Disclosure Claims Were Not Meritorious When Filed

For purposes of demonstrating an entitlement to attorney's fees, a "claim is meritorious . . . if it can withstand a motion to dismiss on the pleadings if, at the same time, the plaintiff possesses knowledge of provable facts which hold out some reasonable likelihood of ultimate success." In re Triarc Cos. S'holders Litig., No. Civ. A. 16700, 2006 WL 903338, at *2 (Del. Ch. Mar. 29, 2006) (citation and quotation marks omitted).  To state a disclosure claim, a plaintiff must plead facts which, if true, would establish that the defendant made a "solicitation"[21] through a proxy statement that contained a false or misleading statement or omitted "any material fact necessary in order to make the statements therein not false or misleading . . ." 17 CFR § 240.14a-9. Further, Plaintiffs must adequately plead that "(1) the proxy statement contained a material misrepresentation or omission (2) that caused the plaintiff injury and that (3) the proxy solicitation was an essential link in the accomplishment of the

---

[21]     Under the Exchange Act rules, a "solicitation" is defined as "(i) Any request for a proxy whether or not accompanied by or included in a form of proxy; (ii) Any request to execute or not to execute, or to revoke, a proxy; or (iii) The furnishing of a form of proxy or other communication to security holders under circumstances reasonably calculated to result in the procurement, withholding or revocation of a proxy." 17 C.F.R. § 240.14a-1(l)(1) (emphasis added).

transaction." Hayes v. Crown Cent. Petroleum Corp., 78 F. App'x 857, 861 (4th Cir. 2003). Delaware law is materially identical.[22] The Amended Complaint does not – and could not have – adequately pleaded any of these elements and thus did not plead a meritorious claim.

a. The Disclosure Claims Were Not Meritorious When Filed Because They Attacked a *Draft*

Preliminary proxy statements are filed with the SEC pursuant to 17 C.F.R. § 240.14a-6(a) so that the SEC staff may review and comment on them before they are used to solicit shareholder votes. A proxy statement is not permitted to be sent to shareholders until the SEC staff concludes it has completed its work and declares the proxy effective. Challenging a draft proxy thus contravenes the very structure of federal law because it "essentially require[s] the Court to perform a function [which] the SEC is already performing." See Initio, Inc. v. Hesse, 474 F. Supp. 312, 321 (D. Del. 1979) (ruling that a plaintiff had no standing to bring an Exchange Act § 10(b) action when the alleged misrepresentations "were made in a preliminary Registration Statement that ha[d] been filed with the SEC but which ha[d] not yet become effective.").

Nor could shareholders have been harmed by the draft proxy. The March 17 Draft Preliminary Proxy was not, and was not alleged to have been, sent to shareholders. Mostaed's counsel presumably obtained it because the SEC makes drafts available on its website pursuant to 17 C.F.R. § 240.14(a)-6(e). The March 17 draft (and each other draft) included prominent and unambiguous bolded legends that the document was a **"PRELIMINARY COPY," "SUBJECT**

---

[22]    See Stroud v. Grace, 606 A.2d 75, 84, 86 (Del. 1992) (Delaware duty of full disclosure in assessing the adequacy of proxy materials under state law, which has adopted the federal standard of materiality, is akin to Section 14(a) of the Exchange Act).

**TO COMPLETION,**" which was "**not complete and may be changed.**"[23] Further highlighting the draft nature of these documents, each contained numerous blanks for which specific information would only be provided in the Definitive Proxy[24] – the only proxy statement that was ever sent to shareholders. The Amended Complaint itself recognizes that a disclosure claim may be asserted only where directors "have failed to disclose all material information to the Company's shareholder necessary for them to make a fully informed decision with respect to the Proposed Acquisition." Am. Compl. ¶ 96(d). That duty could not be breached by the making of statements in a document not sent to shareholders and which they were expressly advised was not asking them to cast a vote. Accordingly, no shareholder could reasonably rely on the draft proxy statements, assuming they affirmatively sought them out.

The disclosure claims in the Amended Complaint were therefore without merit when filed. Neither Mostaed nor any other member of the plaintiff class had actually suffered an injury or immediate threat of injury as a result of the submission of the draft proxy statement to the SEC; rather, the action was "dependent on future uncertainties." See Sigram Schindler Beteiligungsgesellschaft MBH v. Kappos, 675 F. Supp. 2d 629, 636 (E.D. Va. 2009) (quoting Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006)). For this reason, "[a]ny complaint filed prior to the filing and dissemination of the definitive proxy would have been subject to dismissal as premature," since "there would be no 'actual case or controversy' as required under Article III of the Constitution until such time as the allegedly misleading proxy materials were officially

---

[23]   See, e.g., March 17 Draft Preliminary Proxy (Coyle Decl. Ex. A) at Letter to Stockholders.

[24]   See, e.g., March 17 Draft Preliminary Proxy (Coyle Decl. Ex. A) at Letter to Stockholders, 1-17, 19-20, 24-25, 57-60.

issued." Lichtenberg v. Besicorp Grp., Inc., 43 F. Supp. 2d 376, 390 (S.D.N.Y. 1999) (citation omitted).[25]

> b.   Plaintiffs Cannot Establish an Injury, or That the March 17 Draft
>       Preliminary Proxy Was an Essential Link to Completing the Merger

Nor could Plaintiffs have established that the alleged deficiencies of the March 17 Draft Preliminary Proxy caused an injury or that it was an "essential link" in the completion of the merger. Hayes, 78 F. App'x at 861; see also Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 385 (1970); Skeen v. Joann-Stores, Inc., 750 A.2d 1170, 1173 (Del. 2000) ("To state a disclosure claim," plaintiffs must allege "how the omission caused injury.") (citation omitted). Plaintiffs acknowledge that the disclosure contained in the Definitive Proxy was adequate, and that shareholders "ma[de] a fully informed decision in connection with the Merger," Pl. Fee Br. at 2, so the March 17 Draft Preliminary Proxy could not have caused any harm, even if it had somehow been deficient. Shareholders were not asked to vote until after they had received the Definitive Proxy; the March 17 Draft Preliminary Proxy challenged by the Amended Complaint, therefore, could not have been an "essential link in the accomplishment of the transaction."

---

[25]  See Rosan v. Chicago Milwaukee Corp., Civ. A. No. 10526, 1994 WL 30524, *2 (Del. Ch. Jan. 19, 1994), in which the Chancery Court denied a fee request and noted:

> When plaintiff filed his claim, defendant had not completed the conversion in violation of plaintiff's rights as a preferred shareholder and, in fact, had not yet distributed final proxy statements to the shareholders. All that defendant had done was to complete a preliminary draft of the proxy statement. From this preliminary proxy statement, plaintiff derived the claims that formed the basis of his proposed amended complaint. Plaintiff's contentions were based on his allegations that defendant's final proxy statement might not comply with Delaware law and might violate the preferred shareholders' rights. At the time plaintiff made his allegations against defendant, however, no wrong had actually been committed by defendant. Thus, it is apparent that plaintiff's charges against defendant were speculative in nature. On these facts, a determination of merit is simply inappropriate; indeed, it might be said that plaintiff's claims are not meritorious simply by virtue of their being premature. (emphasis in original)

2.      Plaintiffs Alleged No Material Omissions and Did Not Obtain Material
        Disclosures Benefiting Massey Shareholders

A proxy statement contains a material omission if there is "a substantial likelihood that

the disclosure of the omitted fact would have been viewed by the reasonable investor as having

significantly altered the 'total mix' of information made available." Sauer-Danfoss, 2011 Del.

Ch. LEXIS 64 at *15 (quoting Rosenblatt v. Getty Oil Co., 493 A.2d 929, 944 (Del. 1985)

(quoting TSC Indus., Inc., v. Northway, Inc., 426 U.S. 438, 449 (1976))) (emphasis added).

Plaintiffs are entitled to recover fees only where they obtain material disclosures. See id. at *29

("Remedying an immaterial omission through supplemental disclosure does not benefit

stockholders and will not support a fee award."). Mostaed identified, much less obtained, no

material disclosure here.

Much of the "previously undisclosed material information" about which Mostaed

complained was in fact already contained in the draft March 17 Draft Preliminary Proxy, usually

in either identical language or with immaterial differences in wording. The alleged omissions

that were in fact not omissions at all are summarized in the table below:

| Material Omission Alleged in Amended Complaint (April 4, 2011)[26] | Disclosure Already Included in March 17 Draft Preliminary Proxy (March 17, 2011)[27] |
|---|---|
| Names of members and purpose of the Strategic Alternatives Review Committee (the "Committee") | "In connection with Massey's review of its strategic alternatives, Massey's board of directors formed a strategic alternatives review committee to consider and assess Massey's strategic alternatives, including the proposed merger" (pp. 15, 114). "... unanimously resolved to establish a strategic alternatives review committee consisting of Adm. Inman, Mr. Gabrys and Mr. Phillips ..." (p. 68). |

---

[26] See Pl. Fee Br. at 4-6 (citing Am. Compl.).

[27] See March 17 Draft Preliminary Proxy (Coyle Decl. Ex. A).

| | |
|---|---|
| Whether the Committee and Perella Weinberg reviewed the same Massey future projections in their analyses | "Estimates of unlevered free cash flows used for [Perella Weinberg's] analysis were based on the Internal Massey Forecasts and certain assumptions made by Perella Weinberg" (p. 100). |
| What the Individual Defendants meant by employing a process designed to "maximize[] certainty of closing" | "The independent directors of Massey stated that if Massey chose to pursue a strategic transaction, management and Massey's advisors would need to employ a process that maximized certainty of closing (including with respect to requisite antitrust and stockholder approvals and the availability of financing), while minimizing the risks to Massey's stockholders of premature public disclosure" (p. 68). |
| Whether Perella Weinberg conducted a comparable companies analysis | Perella Weinberg "compared the financial performance of [Massey] and [Alpha] with that of certain publicly-traded companies which [Perella Weinberg] believe[d] to be generally relevant" (D-2). |

Thus, almost half of the "disclosures" that Mostaed claims to have achieved were actually present in the allegedly-deficient March 17 Draft Preliminary Proxy – sometimes word for word.

Moreover, many of the disclosures that Mostaed attributes to the Amended Complaint were actually made "[i]n response to the [SEC] Staff's comment":[28]

| Material Omission Alleged in Amended Complaint (April 4, 2011)[29] | SEC Comment Letter Request[30] (April 8, 2011) | Allegedly Supplemental Disclosure(s) in Definitive Proxy (April 29, 2011)[31] |
|---|---|---|
| Backgrounds of members of the Committee | "Please enhance your disclosure to discuss why each member was selected to serve on the committee" (p. 3). | Explanation of why Inman, Gabrys, and Phillips were selected to serve on the Committee, with a description of their experience and expertise ("Adm. Inman was selected to serve on the [Committee] because of . . .") (72). |

---

[28] Coyle Decl. Ex. E, Letter from Matthew Salerno, Cleary Gottlieb Steen & Hamilton LLP, to H. Roger Schwall, Assistant Director, Division of Corporate Finance, U.S. Securities & Exchange Commission (Apr. 12, 2011) at 2, 3, 4.

[29] See Pl. Br. at 4-6 (citing Am. Compl.).

[30] SEC Letter of Apr. 8, 2011 (Coyle Decl. Ex. D).

[31] See Pl. Br. at 4-6; Def. Proxy (Coyle Decl. Ex. C).

| What Don Blankenship meant by "other factors" Alpha should consider in a potential business combination | ". . . [D]escribe the 'other factors' in addition to price that were considered in determining whether or not a potential business combination was in the best interests of Massey stockholders" (p. 2). | ". . . Alpha requested an explanation of the 'other factors' that would influence Massey board of directors' decision so that Alpha could seek to address them . . . Mr. Blankenship responded in a letter to Alpha [that] . . . his previous reference to 'other factors' conveyed the principle that any proposed business combination would be evaluated as a total package" (pp. 68-69). |
|---|---|---|
| Which stockholders pressed for certain corporate governance changes, why they pressed for these changes, and whether these changes were enacted independent of the Proposed Merger | ". . . [E]xplain when and why the discussions with 'certain stockholders' commenced, identify these shareholders and clarify the nexus of the reforms adopted at the October 6 meeting to the discussions with Alpha" (p. 3). | "Certain stockholders, many of which represented pension funds, had been in contact with Massey following the 2010 annual meeting of stockholders regarding proposals for corporate governance reforms supported by RiskMetrics . . . [Description of corporate governance review] . . . This review of Massey's corporate governance was conducted independently of the strategic review process" (p. 71). |

Further undeserved is Mostaed's self-congratulatory credit for Massey's disclosure of "[w]hether Perella [Weinberg] conducted a comparable companies analysis, and, if so, the details and results of this analysis." Pl. Fee Br. at 6. The Amended Complaint alleged that the March 17 Draft Preliminary Proxy disclosed "that Perella <u>did not conduct</u> a comparable companies analysis," and complained that it failed to disclose "why Perella <u>did not conduct</u> such an analysis." Am. Compl. ¶ 87 (emphasis added). That is a blatant misreading of the March 17 Draft Preliminary Proxy, which not only made no such admission, but included in Annex D a copy of the Fairness Opinion which made clear that Perella Weinberg <u>had in fact conducted such an analysis</u>. <u>See</u> March 17 Draft Preliminary Proxy (Coyle Decl. Ex. A) at D-2. The body of the draft proxy statement inadvertently failed to describe that analysis, <u>see</u> Grader Decl. ¶ 5, an oversight that was corrected in the next draft. <u>Id.</u> ¶ 6. There is no suggestion that the Amended Complaint caused any new analysis to be performed. Even if the Amended Complaint's incorrect allegations about the purported failure to perform a comparable company analysis

could be said to have prompted the proofreading of the draft and brought attention to this oversight, correcting an omission in a draft is hardly an earth-shattering achievement.

Finally, there is no "substantial likelihood" that a reasonable shareholder would consider any of the supplemental disclosures for which Mostaed claims credit "important in deciding how to vote." TSC Indus., 426 U.S. at 449.  The Massey Board of Directors recommended that Massey shareholders vote to approve the proposed merger.  Delaware law permits an award to counsel who uncovers – and causes the disclosure of – information that would lead reasonable shareholders to question a board's recommendation; simply demanding disclosure of additional information that at best would reinforce existing disclosures does not "significantly alter the total mix of information."[32]  Mostaed offers no explanation how any disclosure for which his counsel seeks compensation would have caused a reasonable shareholder to consider voting against the proposed merger.  Even the comparable company analyses – the apparent centerpiece of Mostaed's achievement – simply reaffirmed the wisdom of approving the proposed merger, further explaining why the price Alpha was offering was fair.

## II

## AT MOST, PLAINTIFFS ARE ENTITLED TO A
## SMALL FRACTION OF THE FEES THEY REQUEST

Even when all of the elements needed to justify the discretionary award of fees under Delaware law are met, that award must be limited to compensation for work that actually

---

[32]     See, e.g., In re Nat'l City Corp. S'holders Litig., No. 4123-CC, 2009 WL 2425389, at *6 (Del. Ch. July 31, 2009), aff'd, 998 A.2d 851 (Del. 2010) (reducing an agreed-upon fee when "[n]o evidence exist[ed] that the additional disclosures significantly affected the outcome of the shareholder vote.  Indeed, [the] shareholders overwhelmingly voted in favor of the merger"); Coyle Decl. Ex. F, Tr. at 31-32, Campbell v. Talbots, 5199-VCS (Del. Ch. Mar. 1, 2011) (in Delaware, "information that tended to contradict the recommendation of management that was revealed through plaintiffs' efforts has always been given . . . greater credit than something that said, 'oh, just another piece of information, why this deal that management was recommending and the plaintiffs thought wasn't good, was even better.'").

provided a benefit to the class. See, e.g., In re BEA Sys., Inc. S'holder Litig., C.A. No. 3298-VCL, 2009 WL 1931641, at *1 (Del. Ch. June 24, 2009) (awarding fees only for time that was "rationally attributable to the claims that resulted in the benefit"). Time spent coordinating similar cases, or pursuing allegations or claims that yielded no benefit, is "non-compensable." In re Del Monte Foods Co. S'holders Litig., C.A. No. 6027-VCL, 2011 WL 2535256 at *12 (Del. Ch. June 27, 2011).

Here, counsel seeks an award for apparently every moment they billed to this case, starting from the drafting of the Initial Complaint – which asserted claims that provisions of the Merger Agreement, like the proposed price, were unfair, which claims were never pursued much less "mooted." Indeed, shareholders overwhelmingly approved the Merger Agreement in precisely the form it was signed. So, too, the time spent reviewing documents produced in the Delaware case formed no basis for the relief sought in the Amended Complaint (by definition, since the documents were not produced until the day Mostaed filed the Amended Complaint). This is all "non-compensable" under Delaware law. And so is the time counsel claims to have spent drafting documents that were never served, or engaging in litigation – like attending depositions – that did not even occur in this case. Defendants did not hire Mostaed's counsel or his "expert," and no law – state or federal – obliges them to compensate a purported adversary for work whose effect was to "confirm" that the claims the plaintiff asserted did not merit prosecution.

At most, Delaware law might permit compensation for the time spent drafting the disclosure allegations in the Amended Complaint (federal law, of course, prohibits even that). That was the only document Mostaed generated that sought relief that even arguably caused a benefit to Massey shareholders. Perkins generated no such document – the only pleading he

20

filed contained no disclosure claims. While counsel's sparse billing records make it impossible to tell exactly how much time drafting the disclosure claims in the Amended Complaint required, even reading the records generously it was a small fraction of the overall time for which they seek compensation.

A.    Mostaed's Counsel Has Failed to Submit Adequate Documentation for His Requested Fees, And They Should Be Denied for That Reason

Plaintiffs bear the burden of proving the validity of the fees sought, Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990); Stroud v. Milliken Enterprises, Inc., C.A. No. 8969, 1990 Del. Ch. LEXIS 122, *6 (Del. Ch. Aug. 2, 1990), and here firms purporting to do over 80% of the work submitted no time records.  See Johnson Decl.; Thompson Decl.  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). See also In re Conklin, 946 F.2d 306, 316 (4th Cir. 1991) (affirming district court's reduction of fee and expense request to account for "incomplete, inaccurate and irregular records"). The utter inadequacy of the records submitted is a sufficient ground to deny the Fee Application.

B.    Mostaed's Counsel Is, At Most, Entitled to Fees for Work Directly Related to the Preparation and Filing of The Amended Complaint

Even if the Court were to overlook its inadequate documentation, the portion of time directly attributable to the filing of the Amended Complaint is a small fraction of the time claimed in the Fee Request . The Initial Complaint did not assert the disclosure claims Mostaed now argues provided a benefit to the class – indeed, it could not have: it was filed more than a month before the March 17 Draft Preliminary Proxy was sent to the SEC.  Instead, that complaint asserted only claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty based on Mostaed's assertion that the terms of the Merger were unfair and inadequate. Without pursuing any of these claims, Mostaed contends here that he "succeeded in

the goals of the litigation – ensuring that Massey's shareholders were able to make a fully informed decision in connection with the Merger." Pl. Fee Br. at 2. If so, he concedes that the claims asserted in the Initial Complaint were without merit, and, in any event, does not suggest that they conferred any benefit on the class. Thus, counsel did nothing that even arguably benefited the class until they prepared the Amended Complaint asserting the disclosure claims, and are not entitled to fees for work done before then. See, e.g., Triarc, 2006 WL 903338, at *2 (holding that plaintiffs were not entitled to recover attorneys' fees for work "in connection with the original complaint" when the only benefit to the class was as a result of claims asserted in the amended complaint).

Counsel also may not be compensated for any work purportedly done <u>after</u> the draft proxy statement was revised, because – at most – the disclosures in the revised draft were the only benefit obtained for the class. See <u>BEA</u>, 2009 WL 1931641, at *1 (declining to award fees for work done after supplemental disclosures); <u>Triarc</u>, 2006 WL 903338, at *2 (holding that counsel were not "entitled to an award of fees or expenses for work performed after the defendants' corrective disclosure was made, since that disclosure mooted the claims in the amended complaint"). Plaintiffs themselves claim that "virtually all of the material information Plaintiff highlighted in the Amended Complaint" was disclosed in the Definitive Proxy sent to shareholders on April 30. Pl. Fee Br. at 2. In fact, every disclosure mentioned in the Fee Request (whether or not materially beneficial and whether or not caused by the allegations in the Amended Complaint) was included in the April 12 and 21 Draft Preliminary Proxies.[33] If Plaintiffs had, in their own words, "succeeded in the goals of the litigation" when these disclosures were made, Pl. Fee Br. at 2, then any work performed thereafter "was devoted to

---

[33]     See Coyle Decl. Ex. B, Blackline comparing March 17 Draft Preliminary Proxy to April 21 Draft Preliminary Proxy, at 15, 68-69, 70-73, 75-76, 105-07.

non-meritorious claims," Triarc, 2006 WL 903338, at *2, resulted in no benefit to the class, and is "non-compensable." Indeed, accepting everything Mostaed asserts as true, compensating counsel for work done after the lawsuit had achieved its purported purpose would license and richly reward conduct that, by Mostaed's own definition, was unnecessary.

C.     Only A Small Fraction of The Work Plaintiffs Claim They Did Relates to The Amended Complaint

While it is impossible to determine from the inadequate billing records submitted how much time counsel actually spent preparing the Amended Complaint, it is apparent from even a cursory review that the $900,000 sought is grossly unreasonable.

Mostaed's lead counsel, Johnson & Weaver, LLP, aggregates the 573.3 hours it claims to have spent on the litigation, and for which it now seeks over $650,000 in fees,[34] into seven broad categories, each containing multiple topics. Johnson Decl. ¶ 60. But only 35.7 hours were devoted to the only one of those categories that includes tasks even arguably related to the preparation of the Amended Complaint. See id. (claiming 35.7 hours for "[a]nalysis of SEC filings; analysis and investigation related to drafting of amended complaint; discussions with financial expert; drafting and filing amended complaint"). Even on the highly improbable assumption that Mr. Johnson himself billed all of those hours, the lodestar amount would be only $23,205 at his claimed hourly rate of $650. Assuming Mr. Johnson billed 10 hours and fourth-year associate Shawn Fields (who bills at $310 per hour) billed the remaining 25.7 hours, the lodestar amount would be $14,467.[35]

_____

[34]    Johnson & Weaver seeks $236,446 in fees with a multiplier of 2.75. Johnson Decl. ¶¶ 59, 66.

[35]    Mr. Fields ($310/hour) of Mr. Johnson's firm and Ms. Sharifahmadian ($350/hour) of Mr. Thompson's firm are both 2007 law school graduates, and the rate approved of by the Court of Appeals for associates with four years of experience is $200-250 an hour. See, e.g., Grissom v. The Mills Corp., 549 F.3d 313, 323 (4th Cir. 2008). Additionally, the rate approved in

Mr. Thompson's declaration contends that of the 132.3 hours his firm allegedly spent on this case, 21.4 hours were for "[a]nalysis and investigation related to drafting of amended complaint; discussions with financial expert;[36] drafting and filing of amended complaint." Thompson Decl. ¶ 5. The time records attached to Mr. Thompson's declaration, however, support only a tiny fraction of that amount of time – 2.7 hours[37] – for tasks that appear to have relevance to drafting the Amended Complaint. See Thompson Decl. Ex. A. The time records show only three-tenths of an hour (by Mr. Volin) relating to the Amended Complaint by anyone billing at a rate higher than fourth-year associate Shiva Sharifahmadian. Thus, even assuming there were 21.1 additional hours to be found (as opposed to the 2.4 actually billed) and those hours were all attributable to Ms. Sharifahmadian, the lodestar amount for the work purportedly

---

Grissom for partners with 20 or more years of experience in the Northern Virginia region is $335-$380, well below Mr. Johnson's $650 rate. See id. To the extent Mostaed's counsel seek an award based on higher rates than those approved of in Grissom, they have failed to submit adequate evidence to support such an award: "'In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks and award.'" Id. (quoting Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)).

[36]    While "discussions with financial expert" appears in Mr. Thompson's summary chart of his firm's activities, the time records attached to his declaration do not indicate that anyone at Mr. Thompson's firm actually spoke with Mostaed's expert, and the expert himself indicates that he spoke only with Mr. Johnson's firm. Thompson Decl. ¶ 3, Ex. A; Bauer Decl. ¶¶ 2-3, July 11, 2011, ECF No. 60-8.

[37]    See Thompson Decl., Ex. A, at 4 (.3 hours for "review amended complaint, protective order"); 8 (.2 hours for "draft email re word versions of compl and amending compl;" .1 hours for "draft cover letter to chambers re first amended complaint filing"); 9 (.5 hours for "prepare electronic filing of first amended complaint, serve on parties, and prep courtesy copies"); 10 (.2 hours for "prepare and mail stipulation re filing of amended complaint;" .2 hours for "research local EDVA rules and federal rules re amending complaint as a matter of course"); 11 (1 hour for "review first amended complaint"); 13 (.2 hours for "telecon with clerk of court re amendment as a matter of course in mostaed matter").

done by Mr. Thompson's firm's relating to the Amended Complaint would be $7,572.50. Using the 2.7 hours actually included in the time detail, the lodestar is $1,027.50.

Mr. Briscoe's declaration reveals that his firm billed no time to any task even arguably related to the preparation of the Amended Complaint.

Thus, even giving an extremely generous reading to the information submitted – including assuming Mr. Johnson himself billed 35.7 hours to tasks related to the Amended Complaint, giving Mr. Thompson's firm credit for 21.4 hours even though the time detail only includes, at most, only 2.7 hours, accepting the requested rates as appropriate, and assuming the firms did not duplicate each others' efforts – the lodestar for work on the Amended Complaint would be only $30,777.50. Taking into account the time actually reflected in Mr. Thompson's records, the likelihood that the bulk of the work Mr. Johnson's firm performed was done by someone billing at a substantially lower rate than his own, and ignoring the likelihood that the firms duplicated each other's work, the true amount of fees attributable to the Amended Complaint is no doubt much lower even than that.

D.     No Multiplier Is Warranted Here

On top of this, counsel requests a 2.75 multiplier. But the only cases they cite in which a multiplier was awarded are where class counsel either reached a monetary settlement that created a common fund or achieved a judicial victory that did so. See Pl. Fee Br. at 17-18 (citing cases from Delaware and this Circuit). Not a single case involved a "benefit" consisting at most of additional disclosure – much less disclosure that only corroborated the wisdom of a board's recommendation.[38]

---

[38]     For example, in In re NCS Healthcare Inc. S'holders Litig., No. 19786, 2003 Del. Ch. LEXIS 56 (Del. Ch. May 28, 2003), the plaintiffs fought all the way to the Delaware Supreme Court and obtained a preliminary injunction, and shareholders ultimately received $5.50 per

Litigation is not supposed to be a lottery. Delaware courts accordingly attempt to make clear when they exercise their discretion to award fees why and in what circumstances they do so. Very recently, in <u>Sauer-Danfoss</u>, Vice Chancellor Laster not only discussed at length why he awarded a fee in a case where only additional disclosures had been made, but published schedules of the Delaware cases that had recently also done so. <u>Id.</u> at *55 and Apps. A-C. He noted that Delaware courts have awarded significant fees in cases involving "meaningful disclosures, such as previously withheld projections or undisclosed conflicts faced by fiduciaries or their advisors," but "[d]isclosures of questionable quality have yielded much lower awards." <u>Id.</u> at *55. At length, <u>Sauer-Danfoss</u> explains why disclosures like those for which Mostaed takes credit here were of minimal value. <u>Id.</u> at **31-51.

The schedules attached to the Court's opinion also make clear that Delaware courts award only very modest sums, even where plaintiffs achieve a meaningful benefit, when they fail – as here – actually to litigate the cases they file. Indeed, where the plaintiff took no depositions (as here), no award exceeded $82,000 – irrespective of the importance of the disclosure purportedly achieved. Underscoring this point, Vice Chancellor Laster noted that "effort, as in what plaintiffs' counsel actually did," is more important than the number of hours claimed. <u>Id.</u> at *63. In <u>Sauer-Danfoss</u>, "[a]fter filing suit, the plaintiffs did not seek any relief or otherwise try to litigate. Instead, they waited for a transactional development that might [justify a fee award]," <u>id.</u> at **5-6, and they "never filed any document requests or interrogatories, never took any depositions, and never engaged in anything resembling traditional, adversarial discovery." <u>Id.</u> at

---

share instead of the $1.60 they would have received had the plaintiffs not obtained the injunction. In <u>In re Microstrategy Sec. Litig.</u>, 172 F. Supp. 2d 778, 789 (E.D. Va. 2001), the plaintiffs had created a settlement fund of over $150 million, and the court awarded a multiplier of 2.6 (lower than what Plaintiffs seek here) instead of the multiplier of approximately 4 that plaintiffs had requested.

*8. This description is equally apt here. The <u>Sauer-Danfoss</u> court concluded that the plaintiffs' "absence of effort" supported only a $75,000 award. <u>Id.</u> at *63.

Vice Chancellor Laster likened the facts present in <u>Sauer-Danfoss</u> to two other fee applications, <u>BEA</u> and <u>Triarc</u>, recently decided by Delaware courts. In <u>BEA</u>, the court noted that two revised disclosures that plaintiffs had obtained were "of some benefit to the class," but that benefit was "unmistakably modest," and the disclosures "were only a minor aspect" of the complaint. <u>BEA</u>, 2009 WL 1931641, at *1. Plaintiffs in <u>BEA</u> claimed they spent 436 hours on the litigation by the time the additional disclosures were made. <u>Id.</u> The court concluded that "most of that time and those costs was spent on aspects of the litigation that produced no benefit," and therefore estimated that 25% of the fees and costs were "rationally attributable to the claims that resulted in the benefit." <u>Id.</u> It awarded a total of $81,297 in fees and expenses. <u>Id.</u> And <u>BEA</u> involved a preliminary injunction hearing – plainly requiring far more work than Mostaed's counsel expended in this case.

<u>Triarc</u> is the only case listed in the <u>Sauer-Danfoss</u> opinion where plaintiffs, like Mostaed, apparently did little more than file two pleadings. Even though the <u>Triarc</u> plaintiffs obtained disclosure of an omitted but clearly material fact – the chairman of the relevant board committee did not disclose his view that the offer price in a previously abandoned going-private transaction was inadequate, a fact that could prompt shareholders to vote against the similarly priced pending tender offer, 2006 WL 903338, at *2 – the Court awarded only $75,000. <u>Id.</u> at **2-3.[39]

---

[39]    The two cases included in the Appendices to <u>Sauer-Danfoss</u> that awarded fees close to what Plaintiffs seek here both involved multiple depositions and full briefing on preliminary injunction applications, and plaintiffs achieved extensive additional disclosures.    See <u>id.</u>, Appendix C (citing <u>In re Lear Corp. S'holder Litig.</u>, C.A. 2728-VCS (Del. Ch. June 3, 2008)) (in which plaintiffs took ten depositions, defended two, and won a preliminary injunction – and were awarded $800,000) and <u>Globis Capital P'rs, LP v. SafeNet, Inc.</u>, C.A. 2772-VCS, 2007 Del. Ch. LEXIS 237 (Del. Ch. Dec. 20, 2007) (in which plaintiffs took four depositions and fully briefed a

Mostaed's Fee Request does not explain why his counsel is entitled to more than ten times the awards in these cases for less effort and less of a benefit.

In Delaware, when courts exercise their discretion to award fees for supplemental disclosures, they do so "by juxtaposing the case [before the court] with cases in which attorneys have achieved approximately the same benefits." Plains Res., 2005 WL 332811, at *5 (quotation marks omitted). Together, Sauer-Danfoss, BEA and Triac present the relevant benchmarks (though the actual time spent drafting the Amended Complaint here appears to have been far more modest than the time plaintiffs' counsel in those cases devoted to relevant litigation efforts). These recent cases also underscore that under Delaware law fees and expenses are awarded only for work designed to produce, and that actually produced, a tangible benefit to shareholders, and that where counsel's litigation efforts are minimal, fee awards – if any – are too.

E.   No Award Should Be Made For Expenses

It is unclear whether any of Mostaed's claimed expenses relate to preparation of the Amended Complaint, as none of the firms provides sufficient detail as to what the expenses were for or when they were incurred. See Johnson Decl. ¶ 63; Thompson Decl. ¶ 6. On that basis alone, no award is justified. See Trimper v. City of Norfolk, 58 F.3d 68, 77 (4th Cir. 1995) ("the district court acted well within its discretion in disallowing those costs which were insufficiently documented"). At a minimum, the Court should decline to award the excessive "legal research" expenses[40] claimed by Mr. Johnson and Mr. Thompson and the $15,975 in expert fees claimed

---

motion for a preliminary injunction hearing before settling – and were awarded $1.2 million after a settlement that included more than 100 pages of additional detailed disclosure)).

[40]   Mr. Johnson's firm claims $4,873.72 for legal research, and Mr. Thompson's firm claims $11,003.72. Johnson Decl. ¶ 63; Thompson Decl. ¶ 6.

by Mr. Johnson's firm.   While counsel do not identify the subjects of their "legal research," nothing suggests it was related to the Amended Complaint.   Indeed, it appears likely that the research was related to the present application for fees – for example, according to the records submitted with Mr. Thompson's declaration, $9,402.65 of the $11,003.72 his firm claims for Westlaw® research was incurred in June 2011. Thompson Decl. Ex. B, at 1.

Plaintiffs' expert, Dr. Brauer, also conferred no benefit on the class.   His expertise is in financial analysis, and a substantial amount of the work he did presumably was to assess the "fairness" of the proposed merger.   To the extent Dr. Brauer employed his financial training to conclude that the proposed merger was "adequate and fair, from a financial point of view, to Massey's shareholders," Brauer Decl. ¶ 6, he did nothing more than confirm that the challenge to the fairness of the proposed merger, made in the original complaint, had no merit.   Moreover, even assuming there was value in Dr. Brauer concurring in the Fairness Opinion Perella Weinberg rendered, that value did not benefit the class – until this fee application was made, Dr. Brauer apparently expressed his view only to Mostaed and his counsel, not to anyone else in the class, much less in a manner useful to class members in connection with their June 1 vote.

### III

### MOSTAED AND PERKINS ARE NOT ENTITLED TO AN INCENTIVE AWARD

Finally, Mostaed and Perkins seek a $2,000 incentive payment.   But the plain language of the PSLRA "prohibits granting incentive awards to class representatives in securities class actions." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 960 n.4 (9th Cir. 2009) (citing 15 U.S.C. § 78u-4(a)(2)(A)(vi)); see also 15 U.S.C. § 78u-4(a)(4) ("The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class.").

Mostaed and Perkins nevertheless demand payment for the time they spent on this case. Neither, however, even took the trouble to state under oath how much time that was, or what they did, much less explain why they felt it appropriate to bring litigation here when materially identical litigation was already being pursued in Delaware.  Moreover, the only cases they cite in support of their request involved incentive fees awarded out of a common fund.  See, e.g., Domonoske v. Bank of America, N.A., No. 5:08cv00066, 2011 U.S. Dist LEXIS 66056, at *26 (W.D. Va. June 14, 2011) (awarding $5,000 incentive fees out of common fund where plaintiffs had played "an active role" in litigation).  Accordingly, no incentive award is warranted.

### CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Fee Request.

Respectfully submitted,

By:

_____/S/_____
Robert M. Rolfe, Counsel

Robert M. Rolfe (VSB No. 15779)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
(804) 788-8466
rrolfe@hunton.com

Mitchell A. Lowenthal
Boaz S. Morag
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000

Michael R. Lazerwitz
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1500

*Attorneys for Defendant Alpha Natural Resources, Inc. and Alpha Appalachia Holdings, Inc.*

  /s/ _____

Alan D. Wingfield (VSB No. 27489)
Timothy J. St. George (VSB No. 77349)
TROUTMAN SANDERS LLP

1001 Haxall Point
P.O. Box. 1122
Richmond, VA 23218-1122
Telephone: (804) 697-1254
Facsimile: (804) 698-6013
alan.wingfield@troutmansanders.com

CRAVATH, SWAINE & MOORE LLP
Stuart W. Gold
Julie A. North
825 Eighth Avenue
Worldwide Plaza
New York, NY 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendants James B. Crawford, Robert H.*
*Foglesong, Richard M. Gabrys, Robert B. Holland,*
*Bobby R. Inman, Dan R. Moore, Stanley C.*
*Suboleski, and Linda J. Welty*

/s/ Stephen E. Baril

Stephen E. Baril (VSB No. 19604)
SANDS ANDERSON PC

1111 E. Main Street, Suite 2300
Richmond, VA 23219-2906
Telephone : (804) 783-7234
Facsimile: (804) 783-7291
SBaril@SandsAnderson.com

*Attorneys for Defendant Baxter F. Philips*

CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of July, 2011, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Karen Jennifer Marcus
Finkelstein Thompson LLP
1050 30th St NW
Washington, DC  20007
kmarcus@finkelsteinthompson.com

Robert Olin Wilson
Finkelstein Thompson LLP
1050 30th Street NW
Washington, DC  20007
rwilson@finkelsteinthompson.com

Frank J. Johnson
Johnson & Weaver LLP (NA)
501 W Broadway
Suite 1720
San Diego, CA  92101

Shawn E. Fields
Johnson & Weaver LLP (NA)
501 W Broadway
Suite 1720
San Diego, CA  92101


And I hereby certify that I will mail the document by U.S. mail to the following non-filing users:

Elizabeth K. Tripodi
Finklestein Thompson LLP
1050 30th St NW
Washington, DC  20007

Willie C. Briscoe
The Briscoe law Firm PLLC
8117 Preston Road
Suite 300
Dallas, TX  75225

Patrick W. Powers
Powers Taylor, LLP
Campbell Centre II
Suite 1575
8150 N. Central Expressway
Dallas, TX  75206

   /s/
   _____
Robert M. Rolfe, Esq., No. 15779
Attorney for Alpha Natural Resources, Inc.
Hunton & Williams LLP
951 East Byrd Street
Richmond, VA  23219
Phone:  804-788-8200
rrolfe@hunton.com