**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF VIRGINIA**

**RICHMOND DIVISION**

| | |
|---|---|
| BENJAMIN MOSTAED, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>JAMES B. CRAWFORD, ROBERT H. FOGLESONG, RICHARD M. GABRYS, ROBERT B. HOLLAND, BOBBY R. INMAN, DAN R. MOORE, BAXTER F. PHILLIPS, JR., STANLEY C. SUBOLESKI, LINDA J. WELTY, MASSEY ENERGY COMPANY, and ALPHA NATURAL RESOURCES, INC.,<br><br>        Defendants. | Civil Action No.  3:11-cv-00079-REP<br><br>**CLASS ACTION**<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS** |

# TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………  1

LEGAL STANDARD…………………………………………………………...  2

ARGUMENT……………………………………………………………………  2

I.   Plaintiff Is Entitled To A Fee As A Matter Of Law……………………………  2

   A.  Federal Law Does Not Prohibit An Award Of Attorneys' Fees In This Case
   Because Plaintiff Succeeded On His Independent State Law Claim…………...  3

   B.  Plaintiff Succeeded On His Delaware Duty of Disclosure Claim……………...  4

      1.  Plaintiff's Disclosure Claims Were Meritorious When Filed…………  5

         a.  Under Delaware Law, Preliminary Proxy Statements May
         Form A Proper Basis For Meritorious Disclosure Claims……..  5

         b.  Actual Injury And "Essential Link" Are Not Elements Of A
         Delaware Duty of Disclosure Claim……………………………  6

      2.  Plaintiff Obtained Material Supplemental Disclosures………………...  7

         a.  The Disclosure of Perella's Comparable Company Analysis
         Was Material………………………………………………………  8

         b.  The Other Disclosures Were Material………………………….  9

      3.  Defendants Did Not Show That Plaintiff Was "No Cause" In
      Achieving The Supplemental Disclosures……………………………...  10

         a.  Defendants Make No Attempt To Rebut Plaintiff's Role In
         Securing At Least Three Material Disclosures…………………  11

         b.  Defendants' Purported SEC Comment Letter Does Not
         "Establish The Complete Absence Of A Causal Relationship"
         Between Plaintiff's Actions and Defendants' Disclosures…...…  12

         c.  Defendants' Naked Assertion That The Comparable Company
         Analysis Was Omitted Through "Inadvertence" Is Implausible
         And Should Be Rejected ………………………………………  13

II.  Plaintiff's Fee Is Reasonable………………………………………………...  14

   A.  Plaintiff Is Entitled To Fees For All Work Completed In This Action………...  14

      1.  Plaintiff Has Provided Ample Support For His Lodestar ……………...  14

      2.  Plaintiff Was Successful On All Of His Claims ………………………  15

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN
AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

       3.   Plaintiff Incurred Additional Lodestar Due To Defendants' Vigorous     17
Litigation Of The Case……………………………………………………

  B.  Plaintiff's Requested Multiplier Is Reasonable………………………………..     18

      1.   Defendants Unfairly Characterize The Results Obtained………....……   18

      2.   The Other Enhancement Factors Justify A Multiplier…………………   19

  C.  Plaintiff Is Entitled To Reimbursement of Expenses…………………………..    20

III. A Modest Incentive Award Is Justified………………………………………...    20

CONCLUSION………………………………………………………………………    20

# TABLE OF AUTHORITIES

*Albritton v. Johnson*, 2008 U.S. Dist. LEXIS 118681 (Sept. 19, 2008) ...........................................17

*Alessi v. Beracha*, 244 F. Supp. 2d 354 (D. Del. 2003)............................................................4, 7

*Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876 (Del. 1980)................................................2, 10

*Brinckherhoff v. Tex. E. Prods. Pipeline Co., LLC*, 986 A.2d 370 (Del. Ch. 2010).........................16

*Harris v. Rapid-American Corp.*, 1990 Del. Ch. LEXIS 166 (Del. Ch. 1990)................................19

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..................................................................................18

*In re BEA Systems, Inc. S'holder Litig.*, 2009 Del. Ch. LEXIS 121 (Del. Ch. Jun. 24, 2009) ...................................................................................................................................16

*In re Beatrice Cos., Inc. Litig.*, 1986 Del. Ch. LEXIS 414 (Del. Ch. Apr. 16, 1986) .....................11

*In re Del Monte Foods Co. S'holders Litig.*, 2011 Del. Ch. LEXIS 94 (Del. Ch. 2011).............18, 19

*In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171 (Del. Ch. 2007)...............................8, 18

*In re Plains Res., Inc. S'holders Litig.*, 2005 Del. Ch. LEXIS 12 (Del. Ch. 2005) ....................11, 19

*In re Pure Resources, Inc. S'holders. Litig.*, 808 A.2d 421 (Del. Ch. 2002)......................................9

*In re Sauer-Danfoss, Inc. S'holders Litig.*, 2011 Del. Ch. LEXIS 64 (Del. Ch. April 29, 2011) ...........................................................................................................................5, 6, 18

*In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121 (D.N.J. 2010)..............6

*In re Tri-Star Pictures*, 634 A.2d 319 (Del. 1993) ..........................................................................7

*Initio, Inc. v. Hesse*, 474 F. Supp. 312 (D. Del. 1979)....................................................................5

*Kirby v. Richmond Redevelopment & Hous. Auth.*, 2005 U.S. Dist. LEXIS 43547 (E.D.V.A. 2005).............................................................................................................17

*Lan v. Ludrof*, 2008 U.S. Dist. LEXIS 22574 (W.D. Pa. 2008) .........................................................4

*Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135 (Del. 1997).............................................7, 9

*McMullin v. Beran*, 765 A.2d 910 (Del. 2000) ...........................................................................5, 8

*Nichting v. DPL Inc.*, 2011 U.S. Dist. LEXIS 76739 (S.D. Ohio 2011) ...........................................6

*O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902 (Del. Ch. 1999)...........................................7

*Pfeffer v. Redstone*, 965 A.2d 676 (Del. 2009) ..............................................................................5

*Pfeiffer v. Toll*, 989 A.2d 683 (Del. Ch. 2010) ..............................................................................4

*Riverside v. Rivera*, 477 U.S. 561 (1986) .......................................................................17

*Rosan v. Chicago Milwaukee Corp.*, 1994 Del. Ch. LEXIS 7 (Del. Ch. Jan. 19, 1994) ....................5

*Rosenthal v. Burry Biscuit Corp.*, 209 A.2d 459 (Del. Ch. 1949) ......................................2

*San Antonio Fire & Police Pension Fund v. Bradbury*, 2010 Del. Ch. LEXIS 218 (Del. Ch. 2010)..........................................................................................6

*Sugarland Indus. v. Thomas*, 420 A.2d 142 (Del. 1980) ...............................................2, 19

*Tandycrafts, Inc. v. Initio P'rs*, 562 A.2d 1162 (Del. 1989).........................................2, 11

*TSC Industries v. Northway*, 426 U.S. 438 (1970) .....................................................8

*United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076 (Del. 1997) .........................2, 10, 11

*United Vanguard Fund, Inc. v. TakeCare, Inc.*, 727 A.2d 844 (Del. Ch. 1998) ...........................11

*Welch v. Oak Grove Land Co.*, 2008 U.S. Dist. LEXIS 77372 (S.D. Miss. 2008)........................3, 4

*Zirn v. VLI Corp.*, 621 A.2d 773 (Del. 1993) ..................................................................7

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

**INTRODUCTION**

Defendants attack Plaintiff Benjamin Mostaed's ("Plaintiff") reasonable request for attorneys' fees by ignoring Plaintiff's successful common law disclosure claims, applying inapplicable law, and improperly mischaracterizing this litigation.  Claiming that federal law precludes the award of fees in this case, Defendants ignore that both the Private Securities Litigation Reform Act ("PSLRA") and Delaware law allow compensation for Plaintiff's successful prosecution of his breach of fiduciary duty of disclosure claims.  Applying inapplicable law, Defendants erroneously contend that disclosure claims based on preliminary proxy statements are not meritorious when filed, despite clear and consistent Delaware case law indicating otherwise. Egregiously mischaracterizing what has transpired in this litigation, Defendants claim that Plaintiff "did not even attempt to achieve" a benefit for the shareholder class, despite the facts that Plaintiff: 1) filed two well-researched complaints and negotiated an expedited discovery agreement without judicial intervention; 2) reviewed over 330,000 pages of highly relevant documents to determine the scope of Defendants' material misstatements; 3) was required to oppose a spurious motion to stay, and was unable to conduct depositions because of Defendants' stonewalling until after the shareholder vote occurred on June 1, 2011 (the "Merger"); and 4) did in fact achieve significant benefits for the class.  While Defendants may be tempted to use "blunt language," Plaintiff will let the law and the facts speak for themselves:

- Plaintiff made disclosure allegations under both the Securities Exchange Act of 1934 (the "Exchange Act") and Delaware's common law duty of disclosure.  This common law claim is not extinguished when brought in conjunction with the Exchange Act, and plaintiffs bringing both claims simultaneously may recover attorneys' fees for conferring non-monetary corporate benefits on the putative shareholder class.

- Under Delaware duty of disclosure law, plaintiffs may maintain disclosure actions based on inadequate preliminary proxy statements.  Delaware courts, with their specialized corporate acumen, recognize the importance of published, publicly available preliminary proxy statements in seeking shareholder approval of business combinations, and accordingly routinely award significant attorneys' fees for plaintiffs who achieve significant corrective disclosures to preliminary proxy statements.

- The supplemental disclosures secured by Plaintiff were material.  Material disclosures need not have changed the mind of investors in deciding how to vote, but need only assume, under all the circumstances, actual significance in the deliberations of a reasonable

stockholder.  Financial valuation details, such as the comparable company analysis disclosed by Defendants, are material as a matter of law.  The additional supplemental disclosures secured by Plaintiff spoke specifically to the potential self-interested actions of Massey's Board of Directors ("Board"), and thus assumed actual significance in this case.

- Plaintiff is entitled to compensation for every hour worked in this litigation.  Every hour expended in this litigation either advanced the significant corporate benefits achieved by Plaintiff, confirmed these benefits, or opposed Defendants various litigious machinations in attempting to make this case disappear.

- Given the extraordinary nature of the disclosures achieved, Plaintiff is entitled to a modest multiplier.  Moreover, Plaintiffs Mostaed and Perkins are entitled to modest incentive awards for their work in representing the shareholder class.

## LEGAL STANDARD

When a plaintiff pursues a cause of action relating to the internal affairs of a Delaware corporation and generates benefits for the corporation or its stockholders, Delaware law calls for the plaintiff to receive an award of attorneys' fees and expenses determined based on the factors set forth in *Sugarland Industries, Inc. v. Thomas*, 420 A.2d 142 (Del. 1980).  The stockholder need not have sued in a representative capacity, and the Court need not have certified a class.  *Tandycrafts, Inc. v. Initio P'rs*, 562 A.2d 1162, 1165 (Del. 1989). Likewise, the benefit need not have resulted from a litigated judgment or settlement. *Rosenthal v. Burry Biscuit Corp.*, 209 A.2d 459, 460 (Del. Ch. 1949) (Seitz, V.C.). If the defendants take action to moot the dispute, then the plaintiff can seek an award. *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 878 (Del. 1980); *Rosenthal*, 209 A.2d at 460. To obtain a fee in a mooted case, as here, the plaintiff must show that "(1) the suit was meritorious when filed; (2) the action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and (3) the resulting corporate benefit was causally related to the lawsuit." *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997) ("*Vanguard I*").

## ARGUMENT

**I.     Plaintiff Is Entitled To A Fee As A Matter Of Law**

As required under controlling Delaware law, Plaintiff demonstrated in his Memorandum in Support of His Motion for An Award of Attorneys' Fees ("Opening Brief") that he is entitled to a reasonable attorneys' fee award because he filed a claim that was meritorious when filed, he

- 2 -

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

achieved a benefit for the shareholders before a judicial resolution was achieved, and the benefit was causally related to his lawsuit.  In opposition, Defendants present three equally unpersuasive arguments claiming that Plaintiff should not receive a fee:

    1)    Defendants erroneously assert that Plaintiff cannot receive a fee because he brought his claims under the Exchange Act and failed to create a common fund for the shareholder class;

    2)    Defendants ignore Delaware law and contend that Plaintiff's claim was not meritorious when filed because it attacked a preliminary proxy; and

    3)    Defendants falsely maintain that the supplemental disclosures achieved by Plaintiff were not sufficiently "material" to justify an award.

For the reasons stated below, none of these arguments have merit.

### A.    Federal Law Does Not Prohibit An Award Of Attorneys' Fees In This Case Because Plaintiff Succeeded On His Independent State Law Claim

As an initial matter, Defendants summarily contend that Plaintiff is not entitled to a fee because Plaintiff invoked Exchange Act claims, triggering the PSLRA.  The PSLRA, Defendants argue, precludes attorneys' fees except where a monetary benefit was paid to the class, and because no monetary benefit was paid in this case no fee is justified.  This erroneous argument ignores Plaintiff's state law claims, including Plaintiff's successful claim for breach of the duty of disclosure brought under Delaware common law.  *See* Amended Complaint, at ¶¶ 95-96 ("The Individual Defendants have violated their fiduciary duties by . . . fail[ing] to disclose all material information to the Company's shareholders necessary for them to make a fully informed decision with respect to the Proposed Acquisition.").  While Plaintiff may not be entitled to compensation under his federal law claims, he is entitled to a fee award for the successful prosecution of his state law claims.  Federal law does not preclude such an award.

As numerous federal courts have held, neither the Exchange Act, the PSLRA, nor the related Securities Litigation Uniform Standards Act ("SLUSA") extinguish "otherwise viable claims that exist at common law.  Indeed, the text of the 1934 Act itself provides: (T)he rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist in law and equity."  *Welch v. Oak Grove Land Co.*, 2008 U.S. Dist. LEXIS 77372, at *9 (S.D. Miss.

2008).  In particular, "SLUSA expressly preserved . . . state law class actions based on the fiduciary duty of disclosure owed by corporate directors to stockholders."  *Pfeiffer v. Toll*, 989 A.2d 683, 703 (Del. Ch. 2010) (quoting 15 U.S.C. § 78bb(f)(3)(A)); *see also Lan v. Ludrof*, 2008 U.S. Dist. LEXIS 22574, at *64 (W.D. Pa. 2008) ("SLUSA expressly leaves in place certain 'covered' class actions based on state law, namely, those involving . . . any recommendation, position or other communication with respect to the sale of securities of an issuer that . . . concerns decisions of such equity holders with respect to . . . acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.").

For example, in *Alessi v. Beracha*, 244 F. Supp. 2d 354, 358-59 (D. Del. 2003), like this case a shareholder class action challenging a proposed merger of two publicly traded companies, the District of Delaware found that SLUSA did not extinguish plaintiff's class action complaint alleging breach of fiduciary duty under Delaware law where "the gravamen of plaintiff's complaint is the breach of defendants' duty of disclosure" in connection with a stock buyout offer made to small shareholders.  In *Alessi*, the court found persuasive plaintiff's reliance on the "legislative history of SLUSA noting that there is a need to exempt 'shareholder-initiated litigation based on breach of fiduciary duty of disclosure, in connection with certain corporate actions, that is found in the law of some states, most notably Delaware.'"  *Id.* at 358 (quoting S. Rep. 105-185, at 6 (May 4, 1998)).

Importantly, a plaintiff may maintain and receive an attorneys' fee award on a common law duty of disclosure claim even when he brings both Exchange Act and state common law claims.  For example, in *Lan*, the court found that "this litigation is not preempted under SLUSA," even though the plaintiff "asserted a class action claim for breach of fiduciary duty under Pennsylvania law in addition to her PSLRA claim."  *Lan*, 2008 U.S. Dist. LEXIS 22574, at *64-65.  Therefore, federal law does not prohibit an award of attorneys' fees to Plaintiff for his successful prosecution of his state law duty of disclosure claims, Defendants' assertions to the contrary notwithstanding.

### B.   Plaintiff Succeeded On His Delaware Duty Of Disclosure Claim

Plaintiff adequately alleged that Defendants breached their fiduciary duty of disclosure by "fail[ing] to disclose all material information to the Company's shareholders necessary for them to

- 4 -

make a fully informed decision with respect to the Proposed Acquisition." Amended Complaint, at ¶¶ 95-96. This claim was meritorious when filed, and in response to this claim Defendants made numerous significant disclosures to the benefit of the shareholder class. This success on his claim entitles Plaintiff to a fee award, Defendants' arguments to the contrary notwithstanding.

### 1.      Plaintiff's Disclosure Claims Were Meritorious When Filed

In Delaware, the law is clear: "to state a claim for breach by omission of any duty to disclose, a plaintiff must plead facts identifying (1) material, (2) reasonably available (3) information that (4) was omitted from the proxy materials." *Pfeffer v. Redstone*, 965 A.2d 676, 686 (Del. 2009).[1]  Plaintiff adequately alleged each essential element of this duty of disclosure claim.

### a.      Under Delaware Law, Preliminary Proxy Statements May Form A Proper Basis For Meritorious Disclosure Claims

Defendants erroneously assert that Plaintiff's disclosure claims were not meritorious when filed because they alleged material omissions to a "draft" preliminary proxy published on March 17, 2011, rather than the Definitive Proxy on April 29, 2011. However, their only support for this proposition is an irrelevant case from New York that does not discuss Delaware's duty of disclosure, and an unpublished, seventeen year-old decision from the Delaware Chancery Court in which the plaintiff ***never even filed a complaint making disclosure allegations***.  Opposition, at pp. 14-15; *see also Rosan v. Chicago Milwaukee Corp.*, 1994 Del. Ch. LEXIS 7, at *4 (Del. Ch. Jan. 19, 1994) ("[T]he claims plaintiff asserts caused defendant's action were never actually filed.").[2]

In truth, Defendants' misguided attack on the merits of Plaintiff's preliminary proxy disclosure claims is belied by countless Delaware cases indicating otherwise.  *See, e.g., In re Sauer-*

---

[1] *See also McMullin v. Beran*, 765 A.2d 910, 925 (Del. 2000) (holding that the duty of disclosure requires directors, and presumably other corporate fiduciaries, "to provide shareholders with all information that is material to the action being requested and 'to provide a balanced, truthful account of all matters disclosed in the communications with shareholders.'").

[2] Defendants' other authorities discuss pleading standards under the Exchange Act, and do not address Delaware duty of disclosure law at all.  *See* Opposition, at p. 13; *see also* 17 C.F.R. § 240.14a-6(a) (discussing claims under Section 14(a)); *Initio, Inc. v. Hesse,* 474 F. Supp. 312, 321 (D. Del. 1979) (discussing standing to maintain a Section 10(b) action under the Exchange Act).

*Danfoss, Inc. S'holders Litig.*, 2011 Del. Ch. LEXIS 64, at *41 (Del. Ch. April 29, 2011) (awarding fees for plaintiffs' role in achieving supplemental disclosures to preliminary Schedule 14D-9); *San Antonio Fire & Police Pension Fund v. Bradbury*, 2010 Del. Ch. LEXIS 218, at *11, 34-35 (Del. Ch. 2010) (finding that a claim based on a preliminary proxy "offered a reasonable hope of ultimate success and that this lawsuit was meritorious when filed"); *Nichting v. DPL Inc.*, 2011 U.S. Dist. LEXIS 76739, at *16-17 (S.D. Ohio 2011) (granting expedited discovery in securities fraud class action against Delaware company because of meritorious claim that a preliminary proxy "failed to disclose DPL's unlevered cash flows . . ."); *In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *38 (D.N.J. 2010) (recognizing the viability of a duty of disclosure claim against a Delaware corporation demanding "Defendants to correct material deficiencies in the Joint Preliminary Proxy," and awarding attorneys' fees for plaintiffs' role in providing shareholders "with more expansive disclosures prior to the consummation of the underlying transaction").

Each of these cases reflects the courts' recognition that preliminary proxy statements are critically important, because sophisticated investors often review these statements, and additionally because corporations use language contained within them indicating their solicitation for shareholder votes.  For example, in this case Defendants' preliminary proxy forming the basis of Plaintiff's Amended Complaint stated, in boldface type:

> "**MERGER PROPOSAL – YOUR VOTE IS VERY IMPORTANT** . . . **the Alpha board of directors recommends that the Alpha stockholders vote FOR the amendment to the Alpha certificate of incorporation, FOR the issuance of shares of Alpha common stock pursuant to the merger agreement, and FOR the adjournment of the Alpha special meeting under certain circumstances, and the Massey board of directors recommends that the Massey stockholders vote FOR the adoption of the merger agreement and FOR the adjournment of the Massey special meeting under certain circumstances.**"

*See* Declaration of Shawn E. Fields, Esq. ("Fields Decl."), at Ex. A.

### b.      Actual Injury And "Essential Link" Are Not Elements Of A Delaware Duty Of Disclosure Claim

In addition to falsely asserting that Plaintiff cannot maintain a meritorious disclosure claim based on an inadequate preliminary proxy, Defendants also attempt to impose two brand new

requirements for determining whether a disclosure claim is meritorious when filed: establishment of an injury and a showing that the proxy was an "essential link" in the completion of the merger.

However, controlling Delaware law says exactly the opposite. Under Delaware law, "causation and actual quantifiable damages are not elements of a claim for breach of the fiduciary duty of disclosure." *O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 918 (Del. Ch. 1999). In fact, "there is a rule of *per se* damages for breach of the fiduciary duty of disclosure." *Id.* at 917. Likewise, Delaware has long rejected the "essential link" argument, which seeks to impose upon plaintiffs the requirement to prove reliance on the misleading statement by shareholders. In *In re Tri-Star Pictures*, 634 A.2d 319, 330 (Del. 1993), the court rebuffed a defendant's attempt to disprove reliance, stating that "Delaware law is settled that there is no reliance requirement in a claim for breach of a fiduciary duty of disclosure." Therefore, Plaintiff's disclosure claims were meritorious when filed.

### 2.    Plaintiff Obtained Material Supplemental Disclosures

Plaintiff is entitled to attorneys' fees for successful prosecution of disclosure claims only if the supplemental disclosures are "material." Defendants summarily argue that the significant supplemental disclosures obtained by Plaintiff were not material. However, they provide no evidence or explanation for this position. By contrast, Plaintiff submitted the detailed declaration of a highly regarded financial expert who opined that Plaintiff obtained disclosures that "provided critical information to Massey's public shareholders allowing them to independently evaluate the fairness of the Merger from a financial point of view." Fields Decl., Ex. B. This unrebutted evidence, in addition to clear Delaware law regarding materiality, demonstrates that these significant disclosures were in fact "material."

The determination of materiality is an objective test, determined from the standpoint of a reasonable investor. *Zirn v. VLI Corp.*, 621 A.2d 773, 778-79 (Del. 1993). The Delaware Supreme Court has stated that "[a]n omitted fact is material if there is a substantial likelihood that a reasonable stockholder would consider it important in deciding how to vote." *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 143 (Del. 1997) ("a plaintiff must demonstrate a substantial

- 7 -

likelihood that, **_under all the circumstances_**, the omitted fact would have assumed actual significance in the deliberations of the reasonable stockholder.") (emphasis added).  Materiality is situation-specific; that is, it is "determined with respect to the shareholder action being sought." *Alessi*, 849 A.2d at 948 n.50.

Importantly, materiality "does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote."  *TSC Industries v. Northway*, 426 U.S. 438, 449 (1970).  Ignoring this aspect of Delaware duty of disclosure law, Defendants appear to argue that none of the supplemental disclosure secured by Plaintiff were material because "[t]he Massey Board of Directors recommended that Massey shareholders vote to approve the proposed merger," and shareholders ultimately approved the merger.  This argument finds no basis in Delaware law.

a.  **The Disclosure Of Perella's Comparable Company Analysis Was Material**

Plaintiff secured an "unprecedented" supplemental disclosure for Massey's shareholders in the form of the complete comparable company analysis conducted by Perella and presented to the Board just one day before announcement of the Merger.  Fields Decl., Ex. B.  This "bedrock of financial valuation techniques" is of critical importance to shareholders in determining whether a proposed transaction is fair from a financial point of view, and it had gone entirely undisclosed in the Preliminary Proxy.  *Id.*  This critical disclosure is the very definition of a material disclosure. As the court said in *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 200 (Del. Ch. 2007), "[w]hen stockholders must vote on a transaction . . . information regarding the financial attractiveness of the deal is of particular importance . . . because the stockholders must measure the relative attractiveness of retaining their shares versus receiving a cash [or cash and stock] payment." Likewise, the court in *McMullin* found a very similar financial disclosure to be material, holding that "the information provided to Merrill Lynch and the valuation methodologies used by Merrill Lynch" was critical information that should have been disclosed to shareholders.  765 A.2d at 925. Here, Plaintiff secured a nearly identical supplemental disclosure – "information provided to Perella and the valuation methodologies used by Perella" in the form of the comparable company analysis.

- 8 -

Defendants alternately attack the importance of this disclosure as a "proofreading . . . oversight" and as an immaterial analysis that "simply reaffirmed the wisdom of approving the merger." Opposition, at p. 19. While it is implausible that the comparable company analysis was omitted **in its entirety** simply through "inadvertence," *see infra*, even if it were an accidental oversight, it makes the corrective disclosure no less material.[3] Delaware courts have issued a "firm statement that stockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of the board as to how to vote on a merger or tender rely." *In re Pure Resources, Inc. S'holders. Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002). Moreover, the conclusion reached by Perella affirming the fairness of the transaction is irrelevant to the determination of whether this disclosure was material:

> The disclosure of the bankers' fairness opinion alone and without more, provides stockholders with nothing other than a conclusion, qualified by a gauze of protective language designed to insulate the banker from liability . . . ***The real informative value of the banker's work is not in its bottom-line conclusion, but in the valuation analysis that buttresses that result.***

*Id.* (emphasis added). This is precisely what Plaintiff secured: the comparable company valuation analysis buttressing Perella's result that the merger was fair from a financial point of view.

### b.    The Other Disclosures Were Material

In addition to the comparable company analysis, Plaintiff secured at least eight additional supplemental disclosures as a result of his vigorous prosecution of this action. *See* Opening Brief, at pp. 4-6. When considered within the unique context of this case, each of these disclosures clearly assumed actual significance in the minds of stockholders considering how to vote on the Merger.

The determination of materiality is situation-specific, and it is determined based on the circumstances of the particular stockholder action. To demonstrate materiality, a plaintiff need only show that, "***under all the circumstances***, the omitted fact would have assumed actual significance in the deliberations of the reasonable stockholder." *Loudon*, 700 A.2d at 143 (emphasis added).

---

[3] Indeed, one wonders why Defendants would bother to disclose this analysis at all in a revised proxy statement if it was not material.

Here, the unique circumstances of this case included a Merger driven largely by Massey's depressed stock price and exposure to significant liability following the Upper Big Branch mine disaster on April 5, 2010. In addition to Massey's exposure, Massey's Board of Directors faced hundreds of millions of dollars in liability in derivative litigation in Delaware arising from their role in the disaster. Under these circumstances, it was critically important that Massey's shareholders have sufficient information to independently evaluate whether Massey's directors fulfilled their roles as fiduciaries by agreeing to a Merger that served the best interests of the Company, or whether they acted out of self-interest in a desire to have another company assume and extinguish their potential personal liabilities. Each of the supplemental disclosures Plaintiff secured directly addressed this potential self-interest, and thus provided material information to a stockholder who would consider it important to determine, for example: why Don Blankenship's abruptly resigned in the middle of Merger negotiations with Alpha; what "key operators" Defendant Inman encouraged Alpha to retain post-merger; why certain directors were selected to the Strategic Alternatives Review Committee to lead merger negotiations; and what "other factors" Don Blankenship encouraged Alpha to consider in a potential merger. Each of these independent disclosures clearly were material in this case, and were only disclosed after Plaintiff filed his Amended Complaint.

### 3. Defendants Did Not Show That Plaintiff Was "No Cause" In Achieving The Supplemental Disclosures

The final factor in determining whether an award of attorneys' fees is appropriate is whether a causal connection exists between a plaintiff's action and the shareholder benefit. *Vanguard I*, 693 A.2d at 1079. Delaware courts impose the burden of persuasion on defendants because often, as is the case here, defendants will improperly attempt to deny causation. Accordingly, once a plaintiff demonstrates that a benefit to the shareholders has resulted from defendants' corrective actions, the burden shifts to defendants to prove "that the lawsuit *did not in any way* cause their action." *Allied Artists*, 413 A.2d at 880 (emphasis added). As the Delaware Supreme Court has held, "[w]here, as here, a corporate defendant, after a complaint is filed, takes action that renders the claims asserted in the complaint moot, Delaware law imposes on it the *burden of persuasion to show that no causal connection existed* between the initiation of the suit and any later benefit to the shareholders."

*Vanguard I*, 693 A.2d at 1080 (emphasis added).  Importantly, a plaintiff's action need not be the sole cause of the corrective measures taken by defendants because there is no "but for" causation requirement; a plaintiff need only show that his actions played a role in conferring the benefit.  *See also In re Beatrice Cos., Inc. Litig.*, 1986 Del. Ch. LEXIS 414, at *20 (Del. Ch. Apr. 16, 1986).  The burden then shifts to defendants to "establish the ***complete absence*** of any causal relationship between the litigation and their actions rendering moot the plaintiffs' claims."  *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 727 A.2d 844, 852 (Del. Ch. 1998).  "***This is a heavy burden and it is to be expected that a defendant will not often be able to satisfy it***."  *Id.*; *see also In re Plains Res. Inc. S'holders Litig.*, 2005 Del. Ch. LEXIS 12, at *11 (Del. Ch. 2005).[4]  Defendants have not satisfied that heavy burden here.

### a.   Defendants Make No Attempt To Rebut Plaintiff's Role In Securing At Least Three Material Disclosures

Far from conclusively demonstrating that that Plaintiff's lawsuit "did not in any way cause their action," Defendants make no attempt at all to rebut Plaintiff's role in securing for the shareholder class at least three critical supplemental disclosures.  In particular, Defendants fail to rebut the presumption that Plaintiff caused Defendants to make material supplemental disclosures in response to the following allegations:

- Defendants failed to disclose whether the Board authorized Perella to receive and/or solicit business combination proposals in addition to those presented by the Board, or whether it limited to proposals handpicked by the potentially self-interested Board.  (¶ 69);

- Defendants failed to disclose why former CEO Don Blankenship abruptly resigned at the height of negotiations over a Merger that Blankenship had publicly opposed, and whether Blankenship forced out by a potentially self-interested Board. (¶¶ 74-76); and

- Defendants failed to disclose what Defendant Inman meant by "key operators," particularly given the risk that Massey's Board was negotiating a self-interested Merger designed to benefit themselves at the expense of Massey's shareholders. (¶ 77).

---

[4] *See accord Tandycrafts*, 562 A.2d at 1167 ("The sequence of events is not in dispute and the correction or clarification of the proxy material chronologically followed the filing of the Initio suit attacking the accuracy of the material.  It was thus incumbent upon Tandycrafts to demonstrate that there was no causal connection between the suit and the subsequent action.").

Plaintiff made these allegations in his meritorious disclosure claims in his April 4, 2011, Amended Complaint.  After Plaintiff made these allegations, Defendants directly responded in their Definitive Proxy by disclosing supplemental information not contained in the Preliminary Proxy. These disclosures were material and likely "significantly altered the mix" of information available to Massey's shareholders, many of whom undoubtedly had valid concerns regarding the Board's motivations in approving and recommending the Merger.  Thus, as a matter of law, Plaintiff is entitled to a fee for securing these disclosures absent a conclusive showing by Defendants that they played no role in securing the disclosures.  Here, Defendants do not attempt to make such a showing.  Therefore, at least as to these three disclosures, Plaintiff is entitled to a fee award.

> **b.   Defendants' Purported SEC Comment Letter Does Not "Establish The Complete Absence Of A Causal Relationship" Between Plaintiff's Actions And Defendants' Disclosures**

In addition to providing no evidence to rebut Plaintiff's role in securing three critical disclosures, Defendants offer the unpersuasive argument that three further disclosures "were actually made '[i]n response to the [SEC] Staff's comment.'"  Opposition, at p. 17.  But here, even if Defendants are to be taken at their word, this assertion does not conclusively demonstrate that Plaintiff played *no role* in securing these disclosures.  Under Delaware law, a plaintiff need not be the sole cause of a corrective action, nor need he even be the "but for" cause of the corrective action.  All a plaintiff must establish is that his actions played some role.  Here, Plaintiff made the following three disclosure allegations in his April 4, 2011, Amended Complaint:

- Defendants failed to disclose the backgrounds and qualifications of the members of the Strategic Alternatives Review Committee (¶ 66);

- Defendants failed to disclose what Don Blankenship meant by "other factors" Alpha should consider in a potential business combination (¶¶ 72-73); and

- Defendants failed to disclose which stockholders pressed for certain corporate governance changes, why they pressed for these changes, and whether these changes were enacted independently of the Proposed Merger (¶¶ 78-79).

Four days *after* Plaintiff made these allegations, the SEC sent Defendants a Comment Letter requesting identical disclosures.  Three weeks later, on April 29, 2011, Defendants made these exact

disclosures in their Definitive Proxy.  This sequence of events shows that, at a minimum, both Plaintiffs' actions and the SEC Comment Letter played a role in these critical supplemental disclosures.  In fact, given that Plaintiff's Amended Complaint was filed four days **before** the SEC's letter, Defendants do not even dispute that they had already begun responding to Plaintiff's allegations by the time they received the SEC letter.  Nor do Defendants dispute that the SEC letter was based in part on the SEC's review of Plaintiff's Amended Complaint.[5]  In any event, Defendants have not carried their heavy burden to show that Plaintiff in no way caused these material supplemental disclosures.[6]

<blockquote>
c.  **Defendants' Naked Assertion That The Comparable Company Analysis Was Omitted Through "Inadvertence" Is Implausible And Should Be Rejected**
</blockquote>

Even less persuasive – and legally insufficient – is Defendants' bare, unsupported claim that their omission of the comparable company analysis in the Preliminary Proxy "was solely the result of inadvertence."  Declaration of Scott P. Grader, ¶ 5 ("Grader Decl.").  Such a critical analysis, which represents the "bedrock of financial valuation techniques" in evaluating the financial adequacy of a merger's consideration, is one of the most important pieces of financial information contained within proxy statements.  Fields Decl., Ex. B.  One finds it difficult to imagine that the top law firms in the country advising Perella and Defendants would make such a critical "oversight" as a result of "[un]intentional . . . inadvertence."  Grader Decl., ¶¶ 5-6.[7]

---

[5] Indeed, Plaintiff's counsel contacted the SEC to determine whether the SEC read Plaintiff's Amended Complaint before sending its comment letter, further demonstrating the causal link between Plaintiff's allegations and Defendants' corrective disclosures.  The SEC had no comment.  Fields Decl., at ¶ 2.  Defendants have offered no evidence to the contrary.

[6] One must also note that the SEC letter seeking disclosure of these three facts further demonstrates their materiality.  The SEC certainly does not have time to formally request that immaterial information be disclosed in a revised proxy statement.

[7] To the extent that the Court is inclined to believe Mr. Grader's "inadvertence" explanation, Plaintiff respectfully requests that the hearing date on this motion be continued until such time that Plaintiff has the opportunity to depose Mr. Grader regarding this issue.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

Regardless, Defendants' inadvertence claim is irrelevant to the issue of causation.  Even taking as true the highly unlikely "oversight" explanation, all Plaintiff need show to be entitled to a fee is that he filed a meritorious suit and that the benefit sought by that suit chronologically followed.  Plaintiff has made his showing, as demonstrated *supra*, thus shifting to Defendants the "heavy burden" to demonstrate – conclusively – that Defendants' corrective disclosures were ***in no way*** related to this lawsuit.  Defendants' assertion that the comparable company analysis was left out through "inadvertence" does not even attempt to rebut the presumption that Plaintiff's Amended Complaint caused Defendants to correct this omission.  The reason why Defendants left out the analysis is irrelevant; all that matters is the reason why Defendants later disclosed it.  Here, Defendants have failed to carry their burden showing that anything other than Plaintiff's April 4, 2011, Amended Complaint alerted Defendants to this purported "oversight," which they then corrected on April 29, 2011.  This showing is all that is needed under Delaware law for Plaintiff to be entitled to a fee.  Therefore, under Delaware's "common corporate benefit" doctrine, Plaintiff is entitled to an award of attorneys' fees and expenses.

## II.      Plaintiff's Fee Request Is Reasonable

Far from being "grossly unreasonable," as the often hyperbolic Defendants contend, Plaintiff's fee request is reasonable, reflects the necessary work expended by Plaintiff's counsel and the benefits achieved for the class in this litigation, and falls squarely within the range of fees awarded in similar cases under Delaware law.

### A.      Plaintiff Is Entitled To Fees For All Work Completed In This Action

#### 1.      Plaintiff Has Provided Ample Support For His Lodestar

Going above and beyond the requirements of federal law, Plaintiff's counsel have submitted detailed declarations explaining the type of work completed in this litigation, the amount of time spent on each task by each partner, associate, paralegal and litigation assistant, and the rates of each attorney and staff member who worked on this case.  However, Defendants decry the "utter inadequacy of the records submitted" without providing a single explanation for why these detailed records are inadequate.  Opposition, at p. 21.  Thus, to eliminate any doubt as to the adequacy of

Plaintiff's records, Plaintiff stands ready to submit for *in camera* inspection Plaintiff's counsel's detailed timesheets, should the Court so desire to review Plaintiff's time records.[8]

### 2.   Plaintiff Was Successful On All Of His Claims

Defendants erroneously contend that Plaintiff's lodestar should be reduced because it contains time spent asserting claims that "were never pursued much less 'mooted.'"  Opposition, at p. 20.   This is simply not true.  Plaintiff brought four claims in this case: violation of Section 14(a) of the Exchange Act for making misleading statements, violation of Section 20(a) of the Exchange Act for causing Massey to make false statements, breach of fiduciary duty against the Individual Defendants, and aiding and abetting breach of fiduciary duty against Massey and Alpha.  Plaintiff did not seek damages, and instead only sought injunctive relief, alleging that: "The Individual Defendants have . . . failed to disclose all material information to the Company's shareholders necessary for them to make a fully informed decision with respect to the Proposed Acquisition."  Amended Complaint, ¶¶ 95-96.  Plaintiff was entirely successful on the Sections 14(a) and 20(a) claims, as well as the breach of fiduciary duty claim because he secured significant additional disclosures through his prosecution of this action.  Plaintiff was also successful on the aiding and abetting cause of action, as evidenced by Massey and Alpha's joint publication of the Definitive Proxy containing the significant supplemental disclosures.

In arguing that some of Plaintiff's claims "were never pursued," Defendants confuse claims with allegations.   Opposition, at 20 ("[Plaintiff] asserted claims that provisions of the Merger Agreement, like the proposed price, were unfair.").   However, these purported "claims" are not claims at all but instead simply allegations supporting Plaintiff's four claims.  Because Plaintiff was

---

[8] Should the Court request Plaintiff's detailed timesheets, Plaintiff respectfully requests that the Court also ask for Defendants' detailed timesheets.  Defendants attack Plaintiff's counsel's billing rates (with reference to a four year-old case), but fail to note that Defendants' counsel's rates are significantly higher.  For example, Defendants claim that a rate of $310/hour is excessive for a fourth year attorney like Mr. Fields, while Defendant's counsel Cleary Gottlieb Steen & Hamilton LLP bill their law clerks at a rate of $325/hour.  *See* Fields Decl., Ex. C.

successful on all of his claims, even if not every allegation was proven true, Defendants' argument that Plaintiff's lodestar "contains time spent on unsuccessful claims" is without merit.

Similarly without merit is Defendants' suggestion that the only time "directly attributable" to the significant corporate benefits achieved by Plaintiff was "time counsel actually spent preparing the Amended Complaint." Opposition, at pp. 21, 23. Under Delaware law, plaintiffs are entitled to compensation for all time "***rationally attributable*** to the claims that resulted in the benefit." *In re BEA Systems, Inc. S'holder Litig.*, 2009 Del. Ch. LEXIS 121, at *2 (Del. Ch. Jun. 24, 2009) (emphasis added). Here, nearly all of Plaintiff's time was spent either pursuing ultimately successful claims or opposing Defendants' vigorous litigation tactics. For example, the time spent by Plaintiff investigating, drafting and filing the initial complaint containing ultimately successful claims clearly was "rationally attributable" to the benefits conferred on the shareholder class, as was the time spent investigating and filing the Amended Complaint. Similarly, Plaintiff's time spent pursuing discovery to prosecute these claims were rationally related to the benefits achieved, including the prepared motion to expedite discovery and requests for productions of documents and notice of depositions. Contrary to Defendants' suggestion regarding this critical discovery work, the fact that some discovery documents were ultimately not filed and no depositions were taken make time spent on these matters no less compensable. Plaintiff secured over 330,000 pages of documents of discovery directly relevant to his successful claims only through skillful negotiation and threat of filing a motion to expedite discovery. The fact that this motion was never filed does not make it any less critical in achieving such thorough and expedited discovery. Nor does it suggest, as Defendants derisively maintain, that Plaintiff "did not even attempt to achieve" a judicial victory. The record of this litigation demonstrates otherwise.

Moreover, Plaintiff's time spent reviewing critical documents produced by Defendants clearly were "rationally attributable" to the successful prosecution of Plaintiff's claims. As the representative of the putative shareholder class, Plaintiff had a fiduciary obligation to ensure that the disclosures made in the preliminary and definitive proxy statements were sufficient for shareholders to make an informed decision. Without conducting an extensive document review to carefully

analyze the presentations made to the Board by Perella and other financial analysts, Plaintiff would not have been able to determine which further disclosures were necessary, nor confirm the adequacy of the supplemental disclosures secured by Plaintiff in the Definitive Proxy.  Such confirmatory discovery related to a successful claim is compensable under Delaware law.  *See, e.g., Brinckherhoff v. Tex. E. Prods. Pipeline Co., LLC*, 986 A.2d 370 (Del. Ch. 2010).[9]

### 3.   Plaintiff Incurred Additional Lodestar Due To Defendants' Vigorous Litigation Of The Case

The Supreme Court has held that, defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."  *Riverside v. Rivera*, 477 U.S. 561, 581 n.11 (1986).   Here, Defendants' aggressive opposition to Plaintiff's request for attorneys' fees is emblematic of the tenacious approach Defendants took at every turn in this litigation.   Defendants filed a thoroughly researched and well-written motion to stay these proceedings, requiring Plaintiff's diligent and time-consuming efforts to oppose.   Likewise, Defendants steadfastly opposed Plaintiff's attempts to secure additional document discovery or take depositions, and engaged Plaintiff in needless back and forth regarding the timeliness of Plaintiff's Amended Complaint.[10]   This aggressive "scorched earth" approach to this litigation was present during the Court's Initial Pretrial Conference on June 2, 2011, in which no fewer than ten attorneys from four law firms appeared for Defendants, a majority of whom are senior partners with some of

---

[9]   Further attacking Plaintiff's lodestar, Defendants claim that this Court "is entitled to an explanation why it was burdened with" Plaintiff's Lead Plaintiff motion filed on July 22, 2011. Opposition, at p. 1 n.2.  As the PSLRA clearly states, any person seeking to maintain an action under the Exchange Act must file a lead plaintiff motion within 60 days after the publication of the required notice.  *See* 15 U.S.C. §§78u-4(a)(3)(A) and (B).  Plaintiff is merely comply with the requirements of the PSLRA.

[10]  As yet another example of their tenacious tactics, Defendants repeatedly asserted that Plaintiff did not timely file his Amended Complaint, because he filed it 21 days after his initial complaint and before the filing of Defendants' motion to stay.  However, "under Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff may amend his Complaint once as a matter of course ***at any time*** before a responsive pleading is served. . . ." *Albritton v. Johnson*, 2008 U.S. Dist. LEXIS 118681, at *8 (E.D. Va. 2008); *see also Kirby v. Richmond Redevelopment & Hous. Auth.*, 2005 U.S. Dist. LEXIS 43547, at *10 (E.D. Va. 2005) (holding that plaintiff could file an amended complaint four months after filing her initial complaint because no responsive pleadings had yet been filed).

the most prestigious (and expensive) law firms in the country.[11]   Given the time Plaintiff had to

expend in response to Defendants' various litigation maneuvers, Defendants cannot now "be heard

to complain about the time necessarily spent" by Plaintiff in response.

> **B.      Plaintiff's Requested Multiplier Is Reasonable**

Delaware law requires courts to consider a number of case-specific factors in determining

whether to apply a lodestar multiplier.  *See* Opening Brief, at p. 13.   Contrary to Defendants'

assertions, each of these factors weigh heavily in favor of a multiplier in this case.[12]

> **1.      Defendants Unfairly Characterize The Results Obtained**

In determining the reasonableness of attorneys' fees, "the most critical factor is the degree of

success obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).   Undoubtedly aware of this

fact, Defendants significantly mischaracterize the exceptional results obtained by Plaintiff's

counsel.  Defendants claim that Plaintiff merely remedied "immaterial omissions," despite the fact

that Delaware courts have long considered corrective disclosure of a banker's financial valuations to

be "of particular importance" in the merger context.  *Netsmart*, 924 A.2d at 200.   In fact, the very

case on which Defendants rely so heavily in arguing against a multiplier in this case explained that

Delaware courts award significant fee awards for as little as one or two supplemental financial

disclosures: "This Court has often awarded fees of approximately $400,000 to $500,000 for one or

two meaningful disclosures, such as previously withheld projections . . . ."  *In re Sauer-Danfoss Inc.*

*S'holders Litig.*, 2011 Del. Ch. LEXIS 64, at *55.   Similarly, the Court in *In re Del Monte Foods*

---

[11]   Indeed, one wonders how Defendants can balk at Plaintiff's time spent preparing for and attending the Initial Pretrial Conference when: 1) several pending motions were on the table for discussion and/or argument, including Defendant's motion to stay and Plaintiff's motion to consolidate and appoint lead counsel; and 2) nearly a dozen lawyers from prestigious New York law firms flew to Richmond, Virginia specifically for the Conference.  If Defendants felt the Conference important enough to warrant such a cavalcade of senior partners, then they cannot now be heard to credibly attack Plaintiff's likely comparable time spent in preparation, transit, and participation.

[12]   Plaintiff requested $900,000 in fees and expenses in his Opening Brief, reflecting a modest 2.75 multiplier.  Since that time, Plaintiff's counsel have expended 44.8 additional hours of attorney time, for an additional $14,245.50 in lodestar.  Additionally, Plaintiff's counsel have incurred an additional $16,943.87 in expenses.  With these additional fees and expenses totaled in, Plaintiff's requested multiplier now stands at an even more modest 2.51.

*Co. S'holders Litig.*, observed that "[a]wards for supplemental disclosures about bankers' analyses and relationships cluster around $400,000-$500,000," though "[t]he significance of the banker disclosures" in certain cases can warrant a fee outside this cluster.  2011 Del. Ch. LEXIS 94, at *30-34 (Del. Ch. 2011) (awarding $2.75 million in fees and expenses, including $750,000 to $950,000 for "supplemental disclosures . . . about the Barclays opinion [and] the Perella Weinberg opinion").

Here, disclosure of the entire comparable company analysis prepared by Perella and presented to the Board clearly was a critical financial disclosure above and beyond typical disclosures.  Not only have Delaware courts affirmed the importance and reliability of comparable company analyses, *see, e.g.*, *Harris v. Rapid-American Corp.*, 1990 Del. Ch. LEXIS 166 (Del. Ch. 1990), but supplemental disclosure of this "bedrock of financial valuation techniques" is "unprecedented" in the merger context.  Fields Decl., Ex. B.

The additional disclosures obtained by Plaintiff were also critically important, and represented a remarkable result for the class.  Taken together, "under all the circumstances" of the case, including the threat of millions of dollars in personal liability for the Board if they did not approve the Merger, the additional disclosures answered a number of questions for shareholders about the Board's potential self-interest and allowed them to make a fully informed decision.

## 2.     The Other Enhancement Factors Justify A Multiplier

Defendants ignore the other factors heavily weighing in favor of a multiplier in this case.  In considering whether to apply a multiplier under the "common corporate benefit" doctrine, Delaware courts consider the following factors: "(i) the amount of time and effort applied to the case by counsel for the plaintiffs; (ii) the relative complexities of the litigation; (iii) the standing and ability of petitioning counsel; (iv) the contingent nature of the litigation; (v) the stage at which the litigation ended; (vi) whether the plaintiff can rightly receive all the credit for the benefit conferred or only a portion thereof; and (vii) the size of the benefit conferred."  *Plains Res.*, 2005 Del. Ch. LEXIS 12, at *9-10 (citing *Sugarland Indus.*, 420 A.2d 142, 149-50 (Del. 1980)) (the "*Sugarland* factors").  As Plaintiff explained in his Opening Brief, and Defendants fail to rebut in their Opposition, each of these factors justifies a multiplier in this case.  Opening Brief, at pp. 14-22.

## C.    Plaintiff Is Entitled To Reimbursement Of Expenses

As with their improperly narrow conclusion that only time spent drafting the Amended Complaint was "attributable" to the significant benefits achieved in this case, Defendants likewise erroneously assert that the Court should deny reimbursement of expenses that did not "relate to preparation of the Amended Complaint." Opposition, at p. 28. This is flatly untrue. All of the expenses incurred in this case – most notably the legal research and expert fees – were incurred in furtherance of the prosecution of the successful disclosure claims. Plaintiff's expert reviewed the Agreement and Plan of Merger, the Preliminary Proxy, and the Definitive Proxy in order to determine which material omissions existed and whether they had been sufficiently cured through supplemental disclosure. *See* Fields Decl., Ex. B. It was directly as a result of the expert's work that Plaintiff was able to identify the material omissions in the Preliminary Proxy and file the Amended Complaint, and determine the sufficiency of the supplemental disclosures. Moreover, Plaintiff incurred various legal research fees either to advance this case on behalf of the class through discovery motions or to oppose Defendants' motion to stay and motion for a protective order. These expenses are clearly "rationally attributable" to Plaintiff's successful disclosure claims, and accordingly Plaintiff is entitled to reimbursement.

## III.    A Modest Incentive Award Is Justified

Lastly, Defendants claim that Plaintiffs Mostaed and Perkins are not entitled to incentive awards because the PSLRA prohibits such awards. Opposition, at p. 28. Yet again, Defendants ignore Plaintiffs' successful Delaware duty of disclosure claim, as well as Plaintiffs' role in successfully prosecuting this claim. Although Plaintiffs did not incur a great deal of time and expense, they were instrumental in bringing about the significant benefits discussed above. Accordingly, the modest $2,000 incentive awards should be approved.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court award the reasonable sum of $900,000 in attorneys' fees and expenses, and a $2,000 incentive award to each of Plaintiffs Mostaed and Perkins.

Respectfully submitted,

Dated: August 4, 2011

/s/
Robert O. Wilson (VSB# 77791)
Finkelstein Thompson, LLP
The Duvall Foundry
1050 30th Street, N.W.
Washington, DC 20007
Email:  rwilson@finkelsteinthompson.com
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

JOHNSON & WEAVER, LLP
FRANK J. JOHNSON
SHAWN E. FIELDS
110 West A Street, Suite 750
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1586

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE
8117 Preston Road, Suite 300
Dallas, TX 75225
Telephone: (214) 706-9314
Facsimile: (214) 706-9315

POWERS TAYLOR, LLP
PATRICK W. POWERS
Campbell Centre II
8150 N. Central Expressway, Suite 1575
Dallas, TX 75206
Telephone: (214) 239-8900
Facsimile: (214) 239-8901

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August, 2011, the foregoing Reply Memorandum of Points and Authorities in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

**/s/**
Robert O. Wilson (VSB# 77791)
Finkelstein Thompson, LLP
The Duvall Foundry
1050 30th Street, N.W.
Washington, DC 20007
Email:  rwilson@finkelsteinthompson.com
Telephone: (202) 337-8000
Facsimile: (202) 337-8090
